BURR v. HOUSE et al.

(Third Division. Valdez. November 16, 1909.)

No. 358.

1. PUBLIC LANDS (§ 40*)—ABANDONMENT—TOWNSITE.

Abandonment consists in the intention to abandon and the external act or acts by which the intention is carried into effect. The abandonment of possessory rights upon the public domain is a question of fact as well as of intent. To find that real property has been abandoned, the evidence must show that the premises were left vacant without any intention of claiming possession, and with an intention to leave them open for the occupancy of any one who might choose to enter.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 100–102; Dec. Dig. § 40.*]

2. PUBLIC LANDS (§ 41*)—ABANDONMENT—EVIDENCE.

The evidence in support of the charge of abandonment must be clear and convincing, and the burden of proof is upon the one alleging the abandonment, where the one claiming title has not been absent for an unreasonable length of time.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 41.*]

3. EJECTMENT (§ 9*)—TITLE TO SUSTAIN.

A plaintiff must recover in ejectment upon the strength of his own title, and not upon the weakness of defendant's. Ejectment may be maintained in Alaska to recover possession of unpatented town lots.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 16–29; Dec. Dig. § 9.*]

4. PUBLIC LANDS (§ 31*)—POSSESSION—CONVEYANCE.

Settlement upon the public lands of Alaska vests in the settler a property right against every one but the government, and where two persons claim adversely to each other the possession of government land, the one having the prior possession has the prior right; no abandonment having been shown. Possessory rights so acquired may be conveyed from one person to another,

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

3 A.R.—41

and written conveyances are admissible as tending to show a right in the last grantee.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 53; Dec. Dig. § 31.*]

. 5. MECHANICS' LIENS (§ 183*)—PROPERTY INCLUDED.

A lien on a building for materials furnished cannot include another structure, against which no lien is filed, and into the construction, alteration, and repair of which some or all of the materials were used.

[Ed. Note.—For other cases, see Mechanics' Liens, .Cent. Dig. § 315; Dec. Dig. § 183.*]

6. CORPORATIONS (§ 672*) — FOREIGN CORPORATION — EXISTENCE — P.LEADING.

It is a general rule of pleading in this territory that neither the corporate existence nor the failure of a foreign corporation to comply with our local statutes requiring annual statements to be filed within the district can be successfully pleaded on information and belief. The records of the clerk's office, where such annual statements are required to be filed, are open at all times to the plaintiff, and it was her duty to plead knowledge.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 672.*]

This is an action to recover the possession of a certain lot or parcel of land, situate in the town of Valdez, in what is. known as the "Reservation Tract," being a part of the government unappropriated and unclaimed public domain, opened for settlement to the citizens of the territory of Alaska on the 25th day of July, 1902. The facts are sufficiently stated in the opinion.

W. T. Love, for plaintiff.

Edmund Smith and C. E. Bunnell, for defendants.

OVERFIELD, District Judge. This action presents for the court's determination, from the pleadings and all the evidence, the question, among others, whether the lot in dispute

belongs to the plaintiff Burr, or the defendant House; whether the plaintiff has proved all the material elements and allegations set out at length in her complaint, or has a preponderance of evidence in her favor. If she has failed in either, then the defendant must prevail in this case.

While the defendant House is now in possession of the lot in question, has inclosed the same with a substantial board fence and erected thereon a five-room dwelling house, and since July 1, 1908, lived therein with his family, making this lot and house his home, we must not lose sight of the fact in issue; i. e., was House a trespasser on June 8, 1908, as against this plaintiff, or was the lot in question open and unoccupied public domain?

To determine this point under the pleadings, we must see if defendant House has established his allegation that the plaintiff had previous to June 8, 1908, abandoned the lot in question. If this contention be proved by a preponderance of all the evidence submitted, then the question becomes at once solved, and judgment must be for the defendant House.

Abandonment consists in the intention to abandon, and the external act or acts by which the intention is carried into effect. The abandonment of possessory rights upon the public domain is a question of fact, as well as of intent.

To find that real property has been abandoned, the evidence must show that the premises were left vacant without any intention of claiming possession, and with an intention to leave them open for the occupation of any one who might choose to enter. The evidence in support of the charge of abandonment must be clear and convincing, and the burden of proof is upon the one alleging the abandonment, where the one claiming title has not been absent for an unreasonable length of time.

The evidence shows that plaintiff first came to Valdez, Alaska, in 1901, going out to the States in September of the same year, returning to Valdez in April, 1902, and remaining

until September 1905, when she was obliged to leave Valdez again for the States owing to the illness of her son. She returned to Valdez in July, 1906, and remained until August 24th of the same year, when she again left for the States to secure medical treatment both for herself and son, intending, as the plaintiff testified, to return to Valdez in the spring of 1907.

She was prevented from so returning by the fact that her son became afflicted with appendicitis in Portland, Or., where the husband and father has since remained. The plaintiff also alleges her illness during the summer of 1907. However, the plaintiff did return to Valdez with her son on June 19, 1908.

Both the plaintiff's testimony and that of her alleged agent, Waldron, shows that the plaintiff left the property inclosed with a fence and with a 10x12 building thereon, and during the summer and fall of 1907 plaintiff wrote the said Waldron not to sell the lot in question, as she had decided to make it her home, and use the house formerly so occupied by her in Valdez for a business house or shop, and that she also wrote Waldron to the same effect at other times during the winter and spring of 1908, and as late at May.

Waldron's testimony further shows that he was interviewed by several would-be purchasers of this lot in question during the fall of 1907 and winter of 1908, and refused to sell the lot in compliance with orders received from plaintiff, above referred to.

The further evidence of Waldron shows that he personally repaired the fence around the lot up to and as late as one week prior to June 8, 1908, and by request of plaintiff, through the letters referred to, employed John Cantillon to fix and keep the fence in repair, both in 1907 and 1908, as well as during the previous years subsequent to plaintiff's alleged possession in 1904.

It conclusively follows that the evidence shows by a clear preponderance that the plaintiff herein had not abandoned the said lot in question by any overt act or acts (and there are no other allegations) on June 8, 1908, and the defendant's contention as to that allegation fails.

The question, then, properly arises: Did the plaintiff have a sufficient title, possessory or otherwise, to prevail against the defendant House in this action?

Town lots of the character in question in this action can be held only by one in the actual use, occupation, or possession thereof, which may be evidenced by stakes, fencing, buildings, residence, clearing the ground, and other improvements showing the fact.

It is a recognized rule of law that a plaintiff, to recover possession in an action of ejectment, must do so upon the strength of his or her own title, and not on the weakness of the defendant's title, and in this connection the authorities have held that a person in the territory of Alaska, who is in possession of a lot by actual use, occupation, or possession, may maintain an action of ejectment to recover possession from an intruder who has ousted the settler.

Settlement on the public lands of Alaska vests in the settler a property right against every one but the government, and where two persons claim, adversely to each other, the possession of government land, the one having the prior possession has the prior right; no abandonment having been shown. Possessory rights so acquired may be conveyed from one person to another, and written conveyances are admissible as tending to show a right in the last grantee.

The plaintiff's claim to the lot in question originated in obtaining possession of the same under a bill of sale from one Andy Olsen, dated May 23, 1904, and witnessed by the agent, Waldron. At that time the lot in question was in its native

state, covered with brush, fallen logs, and some large trees in the rear part thereof.

Immediately thereafter the uncontradicted testimony shows that the plaintiff, with the aid of her husband and son, cleared the front part of said lot, cutting and burning the brush and logs, and erected a fence about said lot; the fence on the front part of the lot being made of 2x4 posts set about 8 feet apart, and two rows of boards 1x3, and the sides by cutting and setting poles and fastening thereon one strand of wire. She also erected on the lot a building 10x12 feet in dimensions, made of 1x12-inch boards, containing one door, unhung, and a window composed of a sash and four panes of glass. In 1906 split rails and boards were placed on the sides of the lot, and the fence generally repaired, leaving the one strand of wire in the rear, with interlocking stakes and poles.

Thus the property stood when the defendant House entered in 1908, if the testimony of the plaintiff and her witnesses, several in number, is to be credited, except for an opening on the front corner and side, permitting teams to cross the lot in order to avoid a log pile in the adjoining roadway.

The defendant House, and several witnesses called by him, who live in the vicinity of the lot in question, deny in toto the existence of a fence, or say that little evidence of it remained on June 8, 1908. They all admit that the building above referred to was still standing, though damaged, in that the window, if any ever existed, had been destroyed, and the roof in places broken down to some extent, owing to the weight of excessive snowfalls.

Under all the evidence the court is of the opinion that there was sufficient notice given the defendant House, by the physical condition of the lot in question on June 8th, to have put him on his guard that it was claimed by others, and in their occupation and use. In addition to such physical evidence as plainly showed the segregation of this lot from the public do-

main, there were admittedly, by the testimony of House himself, two signs posted on the said above-mentioned building, referring would-be purchasers in one instance to the agent, Waldron, and in the other to a real estate firm in Valdez.

But, despite the evidence of prior use, occupation, and possession just referred to, the defendant House admits he made no inquiry as to the owner, and denies any knowledge of the plaintiff's possession, use, or occupation. It, however, does appear, by the testimony of Mrs. House, that she was advised of the plaintiff's claim to the lot in question by the agent, Waldron, soon after June 8th, if not on said date.

Under the circumstances, it appears to this court that the defendant House did not use the diligence ordinarily exercised by men of common business ability in the everyday affairs of life before entering upon the lot in question.

Upon a consideration of all the evidence submitted upon the question of possession, use, and occupation of the said lot up to and including June 7, 1908, I am of the opinion that a fair preponderance finds such use, occupation, and possession in the plaintiff, as entitles her to a judgment in this action against the defendant House.

Title to property in the unoccupied and unappropriated public domain, when the same is appropriated and held in good faith and with notice to the public, is accorded to citizens of this territory with no less security against subsequent locators or trespassers than is accorded to titles under patent from the government. Such a rule of the enforcement of rights for the possession, use, and occupation of property in this territory, against willful invasion and trespass, is too patent to need amplification. A different construction, pending the action of Congress in further aiding the citizens of this territory to secure their titles to property, would lead to constant contention and legislation, and in many instances to the loss of life and property. While general rules laid down in the cases pre-

viously arising in the territory are guides in determining the right of possession to property between rival claimants, yet each case must stand or fall upon its particular facts.

The question then arises as to the validity of the lien of the defendant the Copper River Lumber Company against the ground and the house erected thereon by the defendant House. The undisputed evidence shows that, immediately upon the entry of House upon this lot, he tore down, not only the fence, but also the building belonging to plaintiff, and at the same time, in the space of a single day, erected a new fence, and very soon thereafter began the erection of his present dwelling house. Similar evidence discloses that the lumber for both the fence and dwelling house, to the value of $389.25, was furnished upon request of the defendant House by the Copper River Lumber Company, and that thereafter, and before 30 days had expired since furnishing the last of the said lumber, a lien was duly filed by the defendant company against the lot and dwelling house, and suit brought in this court to enforce the said lien within 6 months next following.

But, while the lien is filed and pleaded in proper form as to the dwelling house constructed by the defendant House, yet the evidence shows that a considerable portion of the lumber, itemized as furnished by the Copper River Lumber Company, was in fact used by the defendant House in the construction of the fence inclosing the lot and dwelling house.

The lien as filed does not attempt to include the fence, and it is unnecessary here to decide whether such a lien would be valid. It is well established, I apprehend, that a lien on a building for materials furnished cannot include another structure against which a lien is not filed, and into the construction, alteration, and repairs of which some or all of the materials were employed or used. Although no objection was made at the hearing by the attorneys for House or the plaintiff, the court will not allow the matter to pass unnoticed and establish

a precedent under our lien law against its very intent and letter.

Therefore any lien established in this cause cannot include the fence, but the full amount of the lien as alleged and proved may be included in the judgment obtained against the dwelling house, in view of the fact that no objection was made at the trial that this lien attempted to include lumber used in the construction of two different buildings or structures.

The evidence, uncontradicted, shows that the defendant company had no knowledge of the claim to this lot by the plaintiff herein, at any of the times during which it furnished lumber for the erection of the building. It also appears that the plaintiff had knowledge of the erection of the building on her lot, but failed to give any notice to the defendant corporation as required by our Code, to avoid her liability as the owner of the land.

But the plaintiff would offset her delict in failing to file the above-mentioned notice by proving that the defendant Copper River Lumber Company, a foreign corporation, failed to file its annual statement within the district for the year 1907, and that consequently, under section 231 of our Code, the lien could not be enforced.

However, the allegation set up by plaintiff in her reply to this action as consolidated is on information and belief, and therefore does not raise the issue herein. It is a general rule of pleading in this territory that neither the corporate existence nor the failure of a foreign corporation to comply with our local statutes requiring annual statements to be filed within the district can be successfully pleaded on information and belief. The records of the clerk's office, where such annual statements are required to be filed, are open at all times to the plaintiff, and it was her duty to plead knowledge.

That foreign corporations doing business in Alaska should comply with local requirements is beyond question, and the

letter of the law, and the penalties contained in sections 228 and 231 of the Code of Alaska for failure to comply with the said requirements, will be enforced when brought to the attention of the court in proper pleadings.

It is manifest from the reading of these sections of our Code, that Congress, in order to secure compliance by foreign corporations with its terms, made such compliance precedent to the right of any such corporation to do business within the territory, imposed a penalty for noncompliance, and further closed the doors of courts therein to such corporations for the enforcement of any contract arising while not so complying with all the specified requirements. The presumption must, however, be in favor of the corporation having fully complied with all requirements, until the question is properly raised in an issue before the court.

So, also, has the plaintiff asked in her reply for relief inconsistent with that attempted to be established under section 231, in that in her reply she asks that the lien be enforced against the house.

It appears, from the facts above recited, that the plaintiff should have judgment against the defendant Ed House for the possession of the land in question; that the building is held subject to the lien, and must be sold subject to judgment for the amount of the lien of the defendant Copper River Lumber Company for $389.25, the amount claimed in the lien, the cost of preparing and filing the lien, in the sum of $25, and an attorney's fee, in the sum of $100; the surplus, if any, to be paid to plaintiff as damages for the withholding of said lot.

Let judgment and decree be prepared and drawn accordingly.