S. B. MITFORD, Appellant,

v.

Dorothy PRIOR, Trustee in Bankruptcy, etc., Appellees.

AUSTRALASKA CORPORATION, Appellant,

v.

Gustav JOHNSON and Dorothy Prior, etc., Appellees.

No. 19781.

United States Court of Appeals Ninth Circuit.

Oct. 29, 1965.

Rehearing Denied Jan. 18, 1966.

---

Ebin Lewis, Robison, McCaskey & Lewis, Anchorage, Alaska, for appellant Australaska Corp.

S. B. Mitford, in pro. per.

John Savage, Clark & Savage, Anchorage, Alaska, for appellee Dorothy Prior.

Verne O. Martin, Anchorage, Alaska, for appellee Johnson.

Before ORR*, MERRILL, and BROWNING, Circuit Judges.

* Circuit Judge Orr died on October 7, 1965. Judge Orr heard oral argument, and agreed with the disposition ordered by the court, but did not review the opinion.

BROWNING, Circuit Judge.

This action was brought in a court of the State of Alaska by appellee Johnson to foreclose a mechanic's lien on real property making up the Crestview Village Subdivision in the Anchorage Recording District. The suit was removed to the federal district court on petition of the United States, which claimed a tax lien.

Appellant Australaska attacks the portions of the judgment which (1) upheld Johnson's mechanic's lien, and (2) granted priority to a trust deed held by First State Equity Company over a similar deed held by Australaska. Appellant Mitford appeals from the portion of the judgment which (3) held First State Equity's trust deed valid.

## I. *Johnson's mechanic's lien*

Johnson, a civil engineer, claims a lien under Alaska Statutes § 34.35.050 [1] for engineering services performed in connection with the planning and development of Crestview Village Subdivision.

A. Australaska contends that Johnson's claim was not timely filed. Alaska Statutes § 34.35.070 requires that a lien claim be filed within ninety days after the claimant "ceases to labor" on "his contract or the alteration or repair." Johnson's claim was filed June 5, 1961, and states "the last work was performed on the tenth day of March, 1961 and within the ninety (90) days immediately prior to this filing."

Johnson's "last work" consisted of holding a meeting to consider the rejection by the Alaska Department of Health of his bell Creek. Five thousand feet of sewer plan to discharge treated effluent from the subdivision sewage plant into Campand water line had already been installed. Johnson called the meeting of the de-

veloper and his attorneys to consider alternative plans for disposal of the effluent. Johnson proposed to divert it underground. No funds were available to buy the additional land that would be required for this purpose, and no further action was taken. It is not disputed that Johnson exercised engineering skills at the March 10 meeting. However, Australaska contends that his work did not constitute lien-qualifying labor for the following reasons.

First. It is contended that a lien cannot be created on the basis of Johnson's March 10 services because they were occasioned solely by the rejection of Johnson's original plans by state authorities. Australaska relies upon Bebb v. Jordan, 111 Wash. 73, 189 P. 553, 9 A.L.R. 1035 (1920), a contract case in which an architect was denied recovery for his services because his proposed building plan departed materially from local zoning ordinances and was therefore unusable. The present case is quite different. Johnson's initial plan for sewage disposal complied with local law, and was in fact approved by state authorities. The state subsequently imposed a new requirement that a determination be made following an administrative hearing that the proposed use was consistent with proper total utilization of the stream into which the effluent was to be discharged. Johnson's plan was rejected because it failed to meet the new standard. There is no evidence that Johnson expressly or impliedly agreed to condition his compensation upon satisfaction of this added requirement.

Second. Australaska argues that because construction upon one property cannot support a lien upon another (citing Burr v. House, 3 Alaska 641 (1909)), Johnson's services at the March 10 meet-

---

1. The pertinent portion of A.S. § 34.35.050 reads:

    A * * * engineer * * * performing design or supervision services or performing labor upon or preliminary to the construction of * * * a building, * * * machinery, aqueduct, well, or land clearing, or a structure or super- structure, including the clearing, grading, draining, excavating or landscaping of the ground upon which it is constructed, and the installation of sewer and water lines in it has a lien on it for the work done * * * at the instance of the owner of the building or other improvement, or his agent.

ing cannot support a lien upon the subdivision, since the subject matter of the meeting was a disposal site located outside the subdivision. Australaska treats as separate that which was in fact a whole. For reasons noted later, we think the entire subdivision was subject to a lien for Johnson's total services.

■ Third. Australaska contends that the March 10 meeting did not involve lien-supporting labor because the alternative plan was not adopted and the entire project was abandoned, and hence no benefits were actually conferred upon subdivision property. The district court found that the project was abandoned by the owner because "there was no money to proceed." The evidence supports the finding. It is axiomatic that "abandonment of an improvement before the completion thereof, by the owner of the premises, without fault on the part of the contractor, does not abrogate the right of the contractor, laborers, and materialmen to mechanics' liens for the value of the work done and the material furnished." 36 Am.Jur., Mechanics' Liens § 35. See 2 Jones, Liens § 1438 (3d ed. 1914). Australaska is not aided by Gillis v. Gillette, 184 F.2d 872, 13 Alaska 55 (9th Cir. 1950), for there abandonment was by the lien claimant, not by the owner, and was willful and without cause.

■ B. Australaska asserts that Johnson failed to establish that his work was done "at the instance of the owner * * * or his agent," as required by Alaska Statutes § 34.35.050 (emphasis added). The subdivision property was the subject of several transfers between related corporations during the period in question, and Johnson did testify that he was not sure which corporation held title. However, Alaska Statutes § 34.35.115 provides that "every * * * person having charge of the construction, alteration or repair, in whole or in part of a building or improvement * * * is considered to be the agent of the owner * * *." The evidence is uncontradicted that Johnson performed his duties under the direction of persons in charge of construction at the subdivision site.

■ C. Finally, Australaska argues that Johnson's work was done under two separate contracts, one for platting the subdivision and a second for engineering the subdivision's water and sewerage system; that the first contract was completed and paid for; and that services performed on the second cannot support a lien upon the lots in the subdivision because the water and sewerage lines were installed largely under dedicated streets, and not under the lots themselves. The district court found, on substantial evidence, "that the service of [Johnson] encompassed the entire engineering for the project, including subdividing, platting, laying out of roads and streets, and engineering the sewer, water and drainage and other items; this was one entire job, not a series of separate jobs." In these circumstances it was proper to treat the subdivision as an entity subject in its entirety to a lien for Johnson's services, particularly since no individual lots had been transferred to innocent purchasers. Compare Phillips v. Gilbert, 101 U.S. 721, 725, 25 L.Ed. 833 (1879).

Alternatively, the district court concluded that the lots would be lienable for Johnson's labor on the water and sewerage system because that system was essential to the beneficial use of the lots. As the district court said, "the modern and growing view of the law is that a mechanic's lien will attach to property for an improvement not placed thereon if it has a physical or beneficial connection therewith and is essential to the convenient and comfortable use of the premises," citing, among other authorities, Ladue Contracting Co. v. Land Dev. Co., 337 S.W.2d 578, 585 (Mo.App.1960). Australaska offers no substantial reason for doubting the district court's conclusion that the Supreme Court of Alaska would so hold. See Winston Research Corp. v. Minnesota Mining Co., 350 F.2d 134, 142 (9th Cir. 1965).

II. *Priority of First State Equity's trust deed*

■ First State Equity is the beneficiary of a deed of trust on the subdivision property executed in its favor by

Sand Lake Construction Co., Inc. Australaska is the assignor of a later trust deed on the same property executed by Sand Lake in favor of Knik Plumbing and Heating Company, Inc. Australaska claims priority for the Knik trust deed on the basis of an agreement by First State Equity to subordinate its trust deed to the Knik trust deed. However, the district court found "that the said subordination agreement was procured by fraud, involved interlocking and interested corporate officers, that it was procured without adequate consideration, and was made in violation of the order of the Superior Court of the State of Alaska which was supervising the activities of First State Equity Company through a trustee on the pertinent dates; Australaska participated in the obtaining of the subordination agreement and is not therefore an innocent partner."

The record as a whole discloses a scheme by certain individuals, acting through corporations which they dominated, to defraud the public in and about Anchorage. First State Equity was employed as an instrumentality to secure funds from public depositors and investors. Four hundred thousand dollars of the funds thus obtained was transferred by First Equity to participants in the scheme on the security of the deed of trust issued to First Equity by Sand Lake. There was evidence from which the trial court could conclude that the subordination agreement was part of a plan by the same individuals to secure additional funds from Australaska; that the agreement conferred no substantial benefits upon First Equity; that it was in fraud of First Equity's public investors; and that it was executed by First Equity only because of the control which the individuals involved in the scheme exercised over First Equity through interlocking corporate officers and other means.

Australaska argues that there is no evidence implicating it in the fraud, or establishing any interlocking relationships between its officers, directors, or owners and those of the other corporations. The district court did not find to the contrary. Rather, the court's judgment was based upon a finding that Australaska was not an innocent purchaser, and therefore took the trust deed from Knik subject to First Equity's defenses against the subordination agreement. The district court's finding of notice has sufficient support in the record.[2]

2. Australaska's manager participated in the negotiations which led to the issuance of the trust deed to Knik; First State Equity was not represented in these negotiations; the negotiations were conducted by an individual known to dominate Sand Lake Construction, to be heavily indebted to First State Equity, and to be badly in need of funds; the moneys advanced by Australaska went to a corporation controlled by this individual, and not to Knik or to First Equity; the person who executed the subordination agreement as president of First State Equity was the same person who, as president of Sand Lake Construction, had executed the trust deed in favor of First State Equity ten days earlier. From those circumstances it must have been evident to Australaska that First State Equity's interests were in grave danger, yet no one was present to protect them. "Further," as the district court found, "the State of Alaska had commenced a receivership action against First State Equity Company and a restraining order was in effect to prevent First State Equity from disposing of its assets to its detriment; the Court takes judicial notice of the fact that excepionally great publicity was given this action in the newspapers, radio, and television, and Australaska is charged with notice that any dealings involving First State Equity Company or its assets were fraught with danger and subject to the closest scrutiny." Australaska contends that the restriction on transfers by First State Equity was terminated by an order entered prior to the execution of the subordination agreement; and a copy of this order is included in an appendix to Australaska's brief. The order is at best ambiguous; there is no evidence that it was brought to the attention of Australaska, as the original order admittedly was; and, in any event, it was not part of the record below, and is not properly before us.

III. *Validity of First State Equity's trust deed*

■ On behalf of himself and innocent creditors of Sand Lake Construction Company, appellant Mitford asserts that the trust deed executed by Sand Lake in favor of First Equity was invalid. Its validity was not challenged in the district court; the issue may not be raised here for the first time. United States v. Waechter, 195 F.2d 963, 964 (9th Cir. 1952); Hebets v. Scott, 152 F.2d 739, 741 (9th Cir. 1945).

Affirmed.