**In re WOODCREST HOMES, INC., Debtor.**

**WOODCREST HOMES, INC., Plaintiff,**

**v.**

**The FIRST NATIONAL BANK OF PUEBLO; Republic National Bank of Pueblo; KHL Engineering Consultants, Inc.; Don H. Martin and Joy Martin, d/b/a Martin Trenching and Excavating, a co-partnership; United Bank of Pueblo; Daryl Henry; Phyllis Henry; Tracy Atkinson; and William Thiebaut, Jr., as Public Trustee in and for the County of Pueblo, State of Colorado, Defendants.**

Civ. A. No. 81–Z–1757.

Bankruptcy No. 80 K 1857.

United States District Court, D. Colorado.

Dec. 10, 1981.

Paul Spivak, Rothgerber, Appel & Powers, Denver, Colo., for plaintiff.

William E. Kenworthy, Denver, Colo., for defendants.

## ORDER OF REMAND

WEINSHIENK, District Judge.

This matter is before the Court on cross-appeals from the May 29th, 1981, ruling of United States Bankruptcy Judge Glen E. Keller, Jr., in Bankruptcy Proceeding No. 80 K 1857.  11 B.R. 342.  The only parties involved in the issues on appeal are Don and Joy Martin, doing business as Martin Trenching and Excavating, who are the appellants, and the debtor, Woodcrest Homes, Inc., the appellee and cross-appellant.

In their appeal the Martins raise two issues.  The first is whether the parties agreed as to the underlying validity of the Martins' mechanic's lien against Woodcrest in a stipulation which permitted the sale of the property subject to the lien.  The Martins' second issue is whether a mechanic's lien may be claimed for all work done in a subdivision by a general contractor where a portion of the work is done on the developer's land, and a portion is on land dedicated to the city for streets.  Woodcrest on cross-appeal raises the issue of whether a lien waiver stamped on the back of checks drawn payable to the Martins' company and executed by the Martins through endorsement and negotiation constituted an effective lien waiver for all work performed and materials supplied prior to the dates of negotiation of the checks.

The facts are not in dispute.  The parties entered into an oral agreement in September of 1978, under which the Martins were to lay water and sewer lines and complete the necessary excavation on the site of the Bellview subdivision which was being developed by Woodcrest.  In July of 1978, the City of Pueblo had approved the subdivision plat, and thus had accepted Woodcrest's dedication of the streets.  The Martins' work began promptly, some of the lines being installed within the geographic boundaries of the subdivision and some outside in order to connect with existing lines.  Within the subdivision, some lines were located under the previously dedicated streets, while others were laid in utility easements on Woodcrest property.

Woodcrest paid the Martins $75,750.00 on January 9, 1979.  In May the Martins received two checks, one on the 9th for $9,000.00 and one on the 21st for $45,000.00.  Each of the May checks had a form lien waiver stamped on the back of the checks which would be executed by endorsing and negotiating the check, and this was done by Mrs. Martin.  Most of the work was completed by August of 1979, and the Martins tendered a bill for $295,692.79 reflecting the amount then due.  Woodcrest never paid, and the Martins commenced an action to

establish and foreclose their mechanic's lien pursuant to C.R.S.1973, § 38–22–101 et seq. However, before foreclosure was obtained, Woodcrest filed a petition under Chapter 11 of the Bankruptcy Code which effectively stayed the Martins' foreclosure proceeding.

Thereafter, the parties to the bankruptcy stipulated that the entire subdivision could be sold free and clear of all liens. The sale took place and Woodcrest received $100,000.00 in cash and a note for the $865,000.00 balance. From the $100,000.00 cash proceeds of the sale, the Martins received $77,327.25 pursuant to the stipulation. According to the stipulation, the remaining amount of the Martins' claimed mechanic's lien would be satisfied after the bank defendants had been paid. However, the bankruptcy judge determined that Colorado law did not allow the Martins' lien against the subdivision as a whole for work and materials installed under the public streets or outside the subdivision. His decision leaves the Martins in the position of holding an unsecured claim against the debtor's estate in the amount of $218,365.54.

The Court will first consider the issue raised by Woodcrest's cross-appeal, that is, whether the lien waivers executed by the Martins in negotiating Woodcrest's checks are valid. The bankruptcy judge held that lien waivers are not enforceable without consideration and found no consideration to support them in this case. It is settled in Colorado that consideration is required; thus this Court concurs with that holding and finding. See *Western Federal Savings & Loan Association v. National Homes Corporation*, 167 Colo. 93, 445 P.2d 892 (1968). Therefore, the issue raised by the Woodcrest cross-appeal is without merit and the bankruptcy judge will be affirmed on that issue.

The key issue raised by the Martins' appeal is whether a mechanic's lien may be claimed for all work done in a subdivision where a portion of the work is done on land owned by the developer and a portion is outside of the subdivision or under streets within the subdivision which are dedicated to the city. This case involves primarily sewer and water lines laid beneath dedicated streets.

In considering this issue, the Court notes first that a strong public policy supports the Colorado mechanics' lien statute. The statute permits one who has enhanced the value of the land of another to recover for his labor and the value of the materials used in the improvement. Recent cases, including *Amco Electric Company v. First National Bank of Denver*, 622 P.2d 608 (Colo.App. 1981), indicate that § 38–22–101(1) is to be construed liberally in favor of the creation of liens.

In this case the bankruptcy judge very strictly read the Colorado mechanics' lien statute and looked at several cases interpreting it, including *Brannan Sand and Gravel Co. v. Santa Fe Land & Improvement Co.*, 138 Colo. 314, 332 P.2d 892 (1958), and *Fleming v. Prudential Insurance Company of America*, 19 Colo.App. 126, 73 P. 752 (Colo.App.1903). Neither *Brannan Sand* nor *Fleming* address the mechanics' lien question in the subdivision context. They are not directly on point with the issue raised here. Moreover, it does not appear that the Colorado Supreme Court has faced the question raised in this particular case in interpreting the mechanics' lien statute.

There are, however, many other jurisdictions which have addressed this precise issue in interpreting mechanics' lien statutes similar to Colorado's. In *Mitford v. Prior*, 353 F.2d 550 (9th Cir. 1965), the Ninth Circuit decided a similar question concerning a mechanic's lien against an Alaskan subdivision. While that case did not arise in the bankruptcy context, it did involve an engineer's attempt to secure a mechanic's lien against a subdivision for, among other things, water and sewer lines installed beneath dedicated streets and not under the lots.

The Ninth Circuit Court of Appeals held that the work beneath the streets could be covered by the mechanic's lien against the subdivision for two reasons. First, the Court concluded that it was proper to treat the subdivision as an entity subject in its

entirety to the lien. Second, the Court upheld the lower court's determination that the lien was proper, based on a conclusion that the labor on the water and sewage system under the streets was essential to the beneficial use of the lots. "[T]he modern and growing view of the law is that a mechanic's lien will attach to property for an improvement not placed thereon if it has a physical or beneficial connection therewith and is essential to the convenient and comfortable use of the premises." *Id.* at 553.

The *Mitford* decision is in accord with *Ladue Contracting Co. v. Land Development Co.,* 337 S.W.2d 578 (Mo.App.1960). *Ladue* is a Missouri case which was cited with approval in *W. L. Development Corp. v. Trifort Realty, Inc.,* 44 N.Y.2d 489, 406 N.Y.S.2d 437, 377 N.E.2d 969 (1978). Both *Ladue* and *W. L. Development* allow such liens, concluding that sewer lines are among the type of improvements which are necessary to make homes in a subdivision habitable in a manner consistent with reasonable standards of comfort and health and they thus enhance the value of the property. Indeed, as both courts reasoned, "[D]wellings without streets for ingress and egress ... or without efficient sewer systems are just no longer constructed in urban areas. To hold that [these] items are outside the terms of the lien statute would be to turn the clock back to another century." *W. L. Development,* 44 N.Y.2d 489, 406 N.Y.S.2d 437, 377 N.E.2d at 973, citing *Ladue,* 337 S.W.2d at 585.

In fact, Colorado's mechanics' lien statute is from another century. It has been modified only slightly since it was first enacted in 1899, a time before subdivisions and before it was essential to construct sewer lines leading to houses. In addition to the precedents from New York, Alaska, and Missouri, the Court has reviewed cases from California, New Jersey, and Maine which follow the modern trend. See *Nolte v. Smith,* 189 Cal.App.2d 140, 11 Cal.Rptr. 261 (1961); *Pisano v. Taggart,* 29 Cal.App.3d 1, 105 Cal. Rptr. 414 (1972); *J. R. Christ Construction Co. v. Willete Assoc.,* 47 N.J. 473, 221 A.2d 538 (1966); and *Newell v. Carlow,* 403 A.2d 1209 (Me.1979).

Indeed, this view is consistent with an early Colorado Supreme Court decision considering a mechanic's lien for an irrigation ditch. *Cf. Hess Flume Co. v. La Junta Suburban Land Co.,* 63 Colo. 236, 166 P. 246 (1917). In *Hess Flume* the Colorado court considered the language of what is now C.R.S.1973 § 38–22–103(1) in concluding that the statute

... grants a lien on so much of the land whereon the structure or improvement is made, "as may be necessary for the convenient use and occupation of such building," etc. It has been held that this language means all the land which is benefited and whose value is increased by the improvement; it having been made at the instance or with the knowledge of the owner.... The lien being granted in recognition of its inherent justice, it must extend to all the property which is benefited by the improvement. Anything short of that does not do complete justice.

*Id.* 63 Colo. 236, 166 P. at 248. While the instant matter concerns a sewer and water system benefiting a subdivision, the principle supporting the lien in *Hess Flume* for irrigation ditches benefiting farm land is the same.

From the public policy point of view, it is difficult to distinguish the work of a contractor who lays the water and sewer lines for the entire subdivision from that of the architect designing the entire subdivision, or the engineer and surveyors who bring the subdivision plan into existence. It is only reasonable that the mechanics' lien statute allows a lien against the entire subdivision for all of the architect's or engineer's work in development of the project rather than excluding that portion which ends up in construction of the streets. Common sense and reason also require that the statute be read to cover the contractor laying the water and sewer lines which are so essential to the entire subdivision. Despite the fact that the statute is antiquated and talks of wagon roads and aqueducts instead of streets and sewers, it is broad enough to cover the situation in this case,

and should be so construed. This Court has no doubt that the Colorado Supreme Court, if presented with this issue, would follow the strong precedent and the public policy considerations in interpreting the statute to cover the Martins' lien.

Therefore, the Court will order that the ruling of the bankruptcy judge is reversed on the issue of whether the Martins' lien against the entire subdivision is valid when a portion of the materials supplied and labor performed was on land beneath publicly dedicated streets and outside of the formal boundaries of the subdivision property. The holdings in *Mitford, Ladue*, and *W. L. Development*, should guide the Bankruptcy Court in restoring to the Martins the lien priority as stipulated to by the parties. By this ruling, there is no need for this Court to reach the first issue raised by the Martins' appeal concerning the interpretation of the stipulation filed in Bankruptcy Court on November 19, 1980. It is, therefore,

ORDERED that this matter is remanded to the United States Bankruptcy Court for further proceedings consistent with the conclusions of law presented herein.