**BEEMAN BROTHERS DRILLING,**
Plaintiff–Appellee,

v.

**FIRST INTERSTATE BANK OF DENVER, N.A., Defendant and Third–Party Plaintiff–Appellant,**

v.

**SIMMONS LAND AND CATTLE CO., a Colorado limited partnership and Larry Simmons, General Partner, Third–Party Defendant–Appellee.**

No. 87CA1302.

Colorado Court of Appeals,
Div. V.

Aug. 10, 1989.

As Modified on Denial of Rehearing
Nov. 16, 1989.

William J. Baum and John R. Mallory, Denver, for defendant and third-party plaintiff-appellant.

James C. Anesi, P.C., James C. Anesi, Durango, for third-party defendant-appellee.

Yates & Davies, Jeffrey L. Deitch, Durango, for plaintiff-appellee.

Opinion by Judge NEY.

In this proceeding, defendant and third-party plaintiff, First Interstate Bank of Denver, N.A., appeals the judgment of the trial court in favor of plaintiff, Beeman Brothers Drilling, permitting foreclosure of a mechanic's lien against First Interstate's real property. First Interstate also appeals the judgment in favor of Simmons Land and Cattle Co. on First Interstate's claim of unjust enrichment, indemnity, and specific performance. We reverse the judgment in favor of Beeman and affirm the judgment in favor of Simmons.

Beeman was engaged by Smith, First Interstate's predecessor in interest, to drill water wells on the property of Smith's neighbor, Simmons. The wells, if sufficiently productive, were, in accordance with an agreement to be negotiated after testing, intended to to provide water for a real estate development planned for Smith's land and for a mobile home park to be constructed on Simmons' land. Smith agreed to pay Beeman all costs of the drilling, completion, and testing of the wells.

Simmons gave permission for the drilling by Beeman on his land; however, Simmons did not agree to pay for Beeman's services. After testing, no agreement for the allocation of water between Smith and Simmons was ever negotiated nor water made available to Smith's land.

When Smith breached his agreement and did not pay for Beeman's services, Beeman filed mechanics' liens against both Simmons' and Smith's properties. Beeman released its lien against the Simmons' property because Simmons had not agreed to pay for the work.

Beeman initiated an action for foreclosure of its lien against the Smith property, then owned by First Interstate. First Interstate asserted claims for unjust enrichment, indemnity, and specific performance against Simmons which were dismissed by the trial court.

The trial court entered judgment on the lien foreclosure in favor of Beeman. Although the work for which the lien was claimed had been performed on the neighboring property, the court reasoned that the work was for the intended benefit of First Interstate's property.

## I

First Interstate contends that the trial court erred in finding that Beeman is entitled to foreclose on a mechanic's lien against its property. We agree.

The right to a mechanic's lien is governed by § 38–22–101, C.R.S. (1982 Repl. Vol. 16A). *Trustees of Mortgage Trust v. District Court*, 621 P.2d 310 (Colo.1980).

Section 38–22–101(1), C.R.S. (1982 Repl. Vol. 16A) provides:

"All persons of every class performing labor *upon* ... any building, mill, bridge, ditch ... wagon road, tramway, or any other structure or improvement on land, including adjacent curb, gutter, and sidewalk ... shall have a lien upon the property *upon* which they have ... bestowed labor or for which they have furnished materials ... machinery or other fixtures, whether at the instance of the owner, or of any other person acting by his authority or under him, as agent, contractor, or otherwise...." (emphasis supplied)

The plain language of the statute authorizes a lien in favor of the laborers or materialmen only "upon the property upon

which they have" either bestowed labor or materials. It does not authorize a lien against any property other than that *upon* which the services were rendered or for which the fixtures were supplied. *Schmidt Construction Co. v. Fast,* 776 P.2d 1175 (Colo.App.1989). *See Brannan Sand & Gravel Co. v. Santa Fe Land & Improvement Co.,* 138 Colo. 314, 332 P.2d 892 (1958).

We conclude that since the drilling was not upon First Interstate's land nor did it bestow any benefit on that land, it was error to permit foreclosure of a lien against First Interstate's property.

## II

■ First Interstate also contends that the trial court erred in ruling that it is not entitled to recovery from Simmons on the grounds of unjust enrichment, indemnity, and/or specific performance. Because First Interstate did not confer a benefit on Simmons, nor did Simmons agree to pay for Beeman's work, we perceive no error in the court's rulings. *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986).

## III

■ Claiming that First Interstate's appeal against it is frivolous and without substantial justification, Simmons has requested, in its answer brief, attorney fees and costs as to this appeal. We agree that Simmons is entitled to its attorney fees and costs.

Our review of the record and the briefs reveals no rational argument based on the evidence or law in support of First Interstate's contentions on appeal as to Simmons. Under these circumstances, we deem the appeal to be frivolous, as to the contentions against Simmons and award Simmons its reasonable attorney fees and costs incurred on this appeal. *See* C.A.R. 38(d); *Rogers v. Charnes,* 656 P.2d 1322 (Colo.App.1982). The request of Beeman for attorney fees and costs is denied.

The judgment of the trial court is reversed as to Beeman's foreclosure of a lien against First Interstate's land. In all other respects, it is affirmed, and the cause is remanded for determination of reasonable attorney fees and costs incurred by Simmons in the defense of this appeal, together with appropriate interest thereon.

PLANK, J., concurs.

JONES, J., dissents.

JONES, Judge, dissenting.

I respectfully dissent from Part I of the majority opinion because I believe that the trial court was correct in allowing Beeman to foreclose its lien on the First Interstate Property. However, I concur with parts II and III of the opinion.

The facts here reflect that Beeman was engaged by Timothy G. Smith to drill water wells on certain real property he owned which is now owned by First Interstate. The wells were to provide water for a real estate project, Far View Village, which at that time was in the planning stages. The drilling resulted in dry wells.

Seeking a water source for his project, Smith asked for and received permission to drill two test wells on the property of his adjacent landowners, Larry Simmons and Simmons Land and Cattle Co. (Simmons). Initial results from the wells indicated the presence of water on Simmons' property.

Smith, Beeman, and Simmons entered into an agreement for completion of the two wells. Smith and Beeman agreed that Smith would pay all amounts owing to Beeman at that time. Smith did pay Beeman all but $600 of that amount. Smith further agreed to pay additional charges, in the amount of $9,200, for the casing, completion, and volume-testing of the wells. The drilling, at Smith's request, was for the purpose of providing water for Far View Village.

Beeman went on to case, complete, and volume-test the two wells on Simmons' property, but was not paid for these services. Therefore, it filed liens against both Simmons' property and Smith's property. Beeman later released its lien against the Simmons property because Simmons had not contracted for the work, and was not the intended beneficiary of the work.

During pendency of this action, First Interstate foreclosed on Smith's land, and received a Public Trustee's deed for the property. Beeman brought an action for foreclosure on its lien against the First Interstate property, as well as against Smith for breach of contract. Subsequently, First Interstate, as Smith's successor in interest, named Simmons as a third-party defendant on claims of unjust enrichment, indemnity, and specific performance.

The trial court entered judgment on the complaint in favor of Beeman and against First Interstate, finding that Beeman was entitled to foreclosure on its mechanic's lien. The court found that although the work on which the lien was based was performed on Simmons' property, such work was for the intended benefit of First Interstate's property. The court concluded that the drilling of the wells on the Simmons' property was necessary to provide water for development of the Far View project and was, therefore, intended to benefit First Interstate's property. In addition, the court found that the release by Beeman of its lien on Simmons' property did not require an equitable adjustment of Beeman's lien against First Interstate's property.

Finally, the trial court entered judgment in favor of Simmons and against First Interstate on First Interstate's third-party claims, finding that its payment for Beeman's work on Simmons' property would not constitute an unjust enrichment of Simmons, and that First Interstate had no right to recovery based on the theories of indemnity or specific performance. Because I believe that the trial court was correct, I would affirm in all respects.

## I.

I disagree with the view of the majority that the trial court erred in finding that Beeman is entitled to foreclose on its mechanic's lien on the First Interstate property.

A mechanic's lien, established under the statute, is based upon the principle that one who has enhanced the value of property by his labor or material is entitled to a superior lien if he follows certain prescribed procedures. *Wasson v. Hogenson*, 196 Colo. 183, 583 P.2d 914 (1978); *Amco Electric Co. v. First National Bank*, 622 P.2d 608 (Colo.App.1981). The mechanic's lien law was designed for the benefit and protection of lien claimants, such as Beeman, and should accordingly be construed in their favor. *See Kobayashi v. Meehleis Steel Co.*, 28 Colo.App. 327, 472 P.2d 724 (1970).

The right to a mechanic's lien under § 38–22–101, C.R.S. (1982 Repl.Vol. 16A), although wholly statutory, *Trustees of Mortgage Trust v. District Court*, 621 P.2d 310 (Colo.1980), grows out of contract. *Stewart v. Talbott*, 58 Colo. 563, 146 P. 771 (1915) (applying 1908 Colo.Rev.St. § 4025, a precursor to § 38–22–101); *Seracuse Lawler & Partners, Inc. v. Copper Mountain*, 654 P.2d 1328 (Colo.App.1982). Therefore, absent a contract entered into by him for the services, a property owner such as Simmons should not be subject to a lien under § 38–22–101(1), C.R.S. (1982 Repl.Vol. 16A). *See Seracuse Lawler & Partners, Inc. v. Copper Mountain, supra.* Here, no such contract existed as between Simmons and Beeman, but only between Smith and Beeman.

When, as here, the statute requires the lien to be founded upon a contract with the owner of the land or his agent, the "rule is that the lien claimant of a valid lien must establish, by proper proof, the fact that he is the contractual agent, either directly or indirectly, of such owner relative to the making of the improvement or furnishing the material for which the lien is claimed." *Stewart v. Talbott, supra; see Rico Reduction & Mining Co. v. Musgrave*, 14 Colo. 79, 23 P. 458 (1890) (applying 1883 Gen.St.Colo. § 2131, a precursor to 1908 Colo.Rev.Stat. § 4205, and § 38–22–101); *see also Davidson v. Jennings*, 27 Colo. 187, 60 P. 354 (1900). Beeman met its burden of proof as to this requirement.

Because the statute embodies the legislative intent that the right to a lien must be based on contractual obligation, *see Stewart v. Talbott, supra*, we must, if possible, construe it in such a way as to permit the accomplishment of that statutory objective.

*People v. District Court,* 711 P.2d 666 (Colo.1985).

In addition, in *Hess Flume Co. v. La Junta Suburban Land Co.,* 63 Colo. 236, 166 P. 246 (1917), our supreme court considered the language of the General Mechanics' Lien law, then in effect (identical to § 38-22-101(1)), in concluding that the statute grants a lien on so much of the land whereon the structure or improvement is placed "as may be necessary for the convenient use and occupation of such building...." Furthermore, the court in that case held this language to encompass:

> "All the land which is benefited and whose value is increased by the improvement; it having been made at the instance or with the knowledge of the owner.... The lien being granted in recognition of its inherent justice, *it must extend to all the property which is benefited by the improvement.* Anything short of that does not do complete justice." (emphasis added)

*See also In re Woodcrest Homes,* 15 B.R. 886 (Bankr.D.Colo.1981).

As was the court in *re Woodcrest Homes, supra,* I am of the opinion that *Hess Flume Co. v. La Junta Suburban Land Co., supra,* and not *Brannan Sand & Gravel Co. v. Santa Fe Land & Improvement Co.,* 138 Colo. 314, 332 P.2d 892 (1958), applies here.

In *Brannan,* pursuant to a prior agreement with Sears–Roebuck, supported by beneficial consideration, Santa Fe agreed to be responsible for the costs of providing a road across a municipal right-of-way, across its own land, and terminating on land owned by Sears. Santa Fe entered into a contract with a general contractor to pave the road. The road was surfaced and paved by a sub-contractor, Brannan Sand & Gravel Company. Upon Brannan's completion of the road, Santa Fe paid the general contractor in full. However, the general contractor then entered bankruptcy and none of the money paid to it was ever paid to Brannan. Our supreme court determined that the trial court was correct in concluding that Brannan's mechanics' lien action could lie only as to Santa Fe for the work done on Santa Fe's land because the work on Santa Fe's land did not benefit the land owned by the third parties.

Here, the work done by Beeman on Simmons' property was for the intended benefit of the land of First Interstate's predecessor, Smith, and was performed pursuant to a contract directly between Smith and Beeman.

Thus, *Brannan* is distinguishable from this case. However, to the extent that our supreme court in *Brannan* determined that the party liable under the lien is that party which was the intended beneficiary of the work, services and labor, then *Brannan* supports the result I espouse.

The majority also relies upon *Schmidt Construction Co. v. Fast,* 776 P.2d 1175 (1989). Like *Brannan,* that case is distinguishable from the one at bar.

In *Schmidt,* this court affirmed a trial court judgment denying lien foreclosures to plaintiffs who had improved a road extending from where it abutted a subdivision. The section of road improved was neither within nor adjacent to the subdivision. Thus, *Schmidt* is distinguishable from this case because, as this court said in *Schmidt:*

> "insofar as the road extension was not for the *direct benefit* of the land upon which the lien was asserted, the rationale of *Hess Flume* is inapplicable ..." (emphasis added),

and,

> "the road extension ... unlike the sewers at issue in *Woodcrest,* was not '*essential to the beneficial use* of the lots.'" (emphasis added)

*Schmidt Construction Co. v. Fast, supra.*

Here, both of the factors which this court found missing in *Schmidt* are very much present. The water wells were for the direct benefit of First Interstate's land, and were (as the sewers in *Woodcrest*) essential to the beneficial use of First Interstate's land.

Furthermore, this court in *Schmidt* has acknowledged, inferentially, that under the appropriate circumstances, the rationale of *Hess Flume* and *Woodcrest* apply as to the

mechanics' lien statute. Those appropriate circumstances are present in this case.

I would further note that the concept of "intended benefit" makes little difference to the outcome I espouse. The work was performed pursuant to contract with the prior owner of First Interstate's land, and was for the direct benefit of that land. It was for purposes of providing water which was essential to the beneficial use of that land. *Cf. Schmidt Construction Co. v. Fast, supra.* The fact that the anticipated agreement to allocate water to Smith's land was not negotiated, and thus, Beeman's work is now regarded as for the "intended benefit" of First Interstate's land, renders this case analogous to the situation in *Kobayashi v. Meehleis Steel Co., supra.*

There, Meehleis, a subcontractor, produced and delivered fabricated steel products which were to be incorporated by another contractor into precast and prestressed columns for a building. While Meehleis delivered its steel products which met specifications, only 45 of the 96 columns containing its products were ultimately included in the building, through no fault of its own.

Meehleis's lien was contested on grounds that much of its product was not included in the building, and, thus, was of no benefit to the parties contracting for the columns. This court, interpreting a predecessor statute to § 38–22–101, held that it was not necessary that a lien claimant actually work on the job site, and that a benefit is conferred even where the materials delivered were not actually used in the premises against which the lien is sought. This court, thus, held that a mechanics' lien will be enforced when work is performed in accordance with specifications, and is *intended* to benefit the premises against which the lien is placed, even when, through no fault of the providing contractor, the actual benefit of the work or product is not accomplished.

In this case, similarly, Beeman performed work pursuant to contract with Smith, and for the benefit of Smith's land. It is not contested that Beeman's work was professionally and properly performed, and that, through no fault of Beeman's, water was not directed onto Smith's land. The rationale of *Kobayashi*, when applied here, supports the conclusion that, by its work, Beeman conferred *a benefit* to Smith and, thus, to First Interstate, and not simply an "intended benefit."

Finally, "the modern and growing view of the law is that a mechanic's lien will attach to property for an improvement not placed thereon if it has a physical or beneficial connection therewith, and is essential to the convenient and comfortable use of the premises." *In re Woodcrest Homes, supra,* citing *Mitford v. Prior,* 353 F.2d 550 (9th Cir.1965). This view is consistent with the intent of the General Assembly in enacting the mechanics' lien law, and has been recognized and applied by the courts of Colorado throughout this century. *See Hess Flume Co. v. La Junta Suburban Land Co., supra.*

Accordingly, I would hold that Beeman was entitled to assert a mechanics' lien against the First Interstate property to recover for the work performed pursuant to contract on Simmons' property for the benefit of the First Interstate property.