ASPEN DRILLING CO., INC.,
Plaintiff–Appellee,

v.

Jo HAYES, a/k/a Josephine M. Hayes,
Defendant–Appellant.

No. 93CA0243.

Colorado Court of Appeals,
Div. III.

Feb. 24, 1994.

As Modified on Denial of Rehearing
April 7, 1994.

Certiorari Denied July 11, 1994.

Ginsberg and Ginsberg, Sheldon K. Ginsberg, Aurora, for plaintiff-appellee.

Holley, Albertson & Polk, P.C., Dennis B. Polk, Golden, for defendant-appellant.

Opinion by Judge TAUBMAN.

Defendant, Jo Hayes, a/k/a Josephine Hayes, appeals the judgment of the trial court in favor of plaintiff, Aspen Drilling Co., Inc. (Aspen Drilling), permitting foreclosure of a mechanic's lien on Hayes' property, denying Hayes' motion for a trial by jury, and awarding Aspen Drilling $7,618.49 plus costs and interest for breach of contract. We affirm.

## I. Application of Lien on Wells and Equipment Statute

Hayes contends that the trial court improperly concluded that Aspen Drilling had recorded and perfected a lien on her property under the lien on wells and equipment statute, § 38–24–101, et seq., C.R.S. (1982 Repl.Vol. 16A) (Article 24) instead of the general mechanics' lien statute, § 38–22–101, et seq., C.R.S. (1982 Repl.Vol. 16A) (Article 22). She further contends that because of this improper application of the statute she was denied her right to a jury trial. We disagree.

Hayes orally contracted with Aspen Drilling to evaluate an old well on her property. The well was found to be contaminated with an oily substance and unusable. Hayes then contracted with Aspen Drilling to drill a test well in another location on her property. Aspen Drilling completed the test well. Hayes was not satisfied with the quantity and quality of the water the test well produced, refused to pay Aspen Drilling the balance owed for the drilling of the test well, and ordered Aspen Drilling not to return to her property.

On October 15, 1991, Aspen Drilling notified Hayes of its intent to file a lien statement and submitted an invoice for the amount owed on the test well. After receiving the return receipt signed by Hayes, Aspen Drilling recorded the lien against Hayes' property. Later, Aspen discovered that it had provided an incorrect legal description of Hayes' property. Accordingly, it filed a second notice of intent to file a lien and recorded an amended statement of lien on March 13, 1992 after receiving the return receipt signed by Hayes. Aspen Drilling commenced foreclosure and recorded a lis pendens on April 30, 1992.

Before trial, the trial court denied Hayes' request for a jury trial because it found that the lien issue before it was equitable and could not be tried before a jury.

At trial, Hayes argued that Aspen Drilling was precluded from foreclosing on the lien because the lien was time-barred under Article 22, which allows four months to file a lien after completion of the work. Section 38–22–109, C.R.S. (1982 Repl.Vol. 16A). Aspen Drilling contends that it filed the lien pursuant to Article 24, which allows six months to file a lien after completion of the work. Section 38–24–101, et seq., C.R.S. (1982 Repl.Vol. 16A). The trial court found that Aspen Drilling had filed its lien under Article 24 and that its lien was, therefore, not time-barred.

The determination of which statute is applicable to a lien filed on a water well is an issue of first impression in Colorado. *Cf. Beeman Brothers Drilling v. First Interstate Bank,* 784 P.2d 836 (Colo.App.1989) (Article 22 applied to resolve water well lien issue but no issue raised as to which statute applied

and result would have been the same under either statute).

■ Our determination of which statute applies here is governed by principles of statutory interpretation. In interpreting statutory language, we must effectuate the plain meaning of the words used by the General Assembly by giving words and phrases found in statutory provisions their familiar and generally accepted meaning. *Martin v. Montezuma–Cortez School District RE–1*, 841 P.2d 237 (Colo.1992). If a specific statute and a general statute on the same subject conflict, the provisions of the specific statute prevail. *Moran v. Carlstrom*, 775 P.2d 1176 (Colo.1989).

Section 38–22–101 provides that persons involved in "construction, alteration, improvement, addition to, or repair, either in whole or in part, of any building, mill, bridge, ditch, flume, aqueduct, reservoir, tunnel, fence, railroad, wagon road, tramway, or any other structure or improvement upon land" shall have a lien on the property or materials for the value of the services rendered.

Section 38–24–101 provides:

Every person, firm, or corporation, . . . who performs labor upon or furnishes machinery, material, fuel, explosives, power, or supplies for sinking, repairing, altering, or operating any gas well, oil well, or other well or for constructing, repairing, or operating any oil derrick, oil tank, oil pipeline or water pipeline, pump or pumping station . . . shall have a lien to secure the payment thereof upon the properties mentioned. . . .

"Well" is defined as "a pit or hole sunk into the earth to such a depth as to reach a supply of water, generally of a cylindrical form, and often walled with stone, bricks, tubing, etc. to prevent the earth from caving in," and is further defined as "a shaft or hole sunk to obtain oil, brine or gas." *Webster's Third New International Dictionary* 2594 (1986); *see Light v. Rogers*, 125 Colo. 209, 242 P.2d 234 (Colo.1952). "Improvement" is defined as "an enhancement or augmentation of value or quality . . . increasing of profitability, excellency, or desirability . . . (an [improvement] of the property by building several outbuildings)." *Webster's, supra*, at 1138.

Here, a water well is within the scope of the definition of "improvement" under Article 22 since a productive water well would enhance the value of Hayes' property. However, a water well more properly fits within the provisions of Article 24, which specifically addresses sinking a hole into the earth to obtain a natural resource below it.

Since § 38–24–101 refers to "gas wells, oil wells and other wells," Hayes contends that under the principle of *ejusdem generis*—that a general term which follows specific terms must be given a limited construction—"other wells" must be limited to wells related to "gas wells" and "oil wells," such as dry holes. Such a construction would be forced, however, since wells are typically used to extract water in addition to gas and oil. Furthermore, the statute also refers to "any well" and "all other wells" without specific reference to the type of well.

Although a well may be encompassed by either statute, the statutes may conflict because the time limitations for recording a lien are different: Article 22 prescribes that the lien must be recorded within four months after completion of work, while Article 24 provides a six month recording limitation. Because the more specific provisions of Article 24 supplement the general provisions of Article 22, we conclude that Article 24 controls here.

In *Moran v. Carlstrom, supra*, 775 P.2d at 1182–83, the supreme court gave the following example of how this type of conflict should be resolved:

As an example of the typical situation in which the specific statute controls over a conflicting general statute on the same subject, one statute may prescribe a six-year limitations period during which a general tort claim may be brought, while another statute may prescribe a three-year limitations period during which a product liability claim may be brought. A product liability claim that accrued five years before it was filed would be barred under the more specific statute but not barred under the general statute. It would not be possi-

ble to give effect to both statutes. Those two statutes therefore conflict and, under familiar principles of statutory construction, the three-year limitations period would apply to bar the claim.

Here, the situation is virtually identical to the example given by the supreme court. Thus, giving the plain and ordinary meaning to the language, and applying familiar principles of statutory construction, we conclude that the trial court properly applied Article 24.

Additionally, Hayes argues that courts have implicitly limited the application of Article 24 to oil and gas liens. Citing as an example Meyer & Dufford, *Oil & Gas Mechanics' Liens Revisited,* 15 Colo.Law. 1822 (1986), she also maintains that articles written on the subject refer to Article 24 exclusively as the "Oil and Gas Mechanics' Lien Statute." These arguments are without merit. Only one Colorado case has dealt with liens on water wells, *see Beeman Brothers Drilling v. First Interstate Bank, supra,* and, as noted above, it did not address which statute applies. Additionally, no commentator has suggested that Article 24 should be limited to oil and gas wells.

■ Since we conclude that the trial court applied the correct statute with regard to the lien, Hayes' argument that she was entitled to a jury trial is without merit. A lien action is presumptively equitable and is to be tried by the court. *Federal Lumber Co. v. Wheeler,* 643 P.2d 31 (Colo.1981). Accordingly, her breach of contract claim was also properly tried to the court.

II. Existence or Non-existence of Contract

■ Hayes contends that because she had not entered into a contract with Aspen Drilling, it is not entitled to recover damages for breach of contract. We disagree.

"When the existence of a contract is in issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine the issue." *Harlan C. Stientjes, P.C. v. Olde–Cumberlin Auctioneers, Inc.,* 754 P.2d 1384, 1385 (Colo.App. 1988).

In Hayes' answer to Aspen Drilling's complaint, she admitted the existence of an agreement. Thus, the trial court properly found that there was an oral agreement between Hayes and Aspen Drilling.

■ Hayes next contends that Aspen Drilling failed to comply with an implied or express warranty as to the quality or quantity of water which she alleges Aspen Drilling promised her and, therefore, Aspen Drilling should not be allowed to recover under a contract theory. In this regard, Hayes concedes that generally a well driller does not impliedly warrant the quantity or quality of water, but maintains that such rule does not apply when a well driller agrees to drill a well that will accomplish a specific purpose and deliver a specific quality of water. Whatever the merits of Hayes' legal argument, we agree with the trial court ruling that no warranty was present here.

■ When the terms of a contract are in dispute, the trial court may resolve conflicting evidence and determine its provisions. "The sufficiency, probative effect, weight of the evidence, and the inferences and conclusions to be drawn therefrom, will not be disturbed on appeal unless they are so clearly erroneous as to find no support in the record." *Harlan C. Stientjes, P.C. v. Olde–Cumberlin Auctioneers, Inc., supra,* at 1385.

Here, Aspen Drilling produced evidence that there was no express or implied warranty as to the quantity or quality of water. At trial, Aspen Drilling's witness testified that it is "impossible to second guess Mother Nature" and that there is no way for a drilling company to know where water veins lie, or how much water the veins will produce. Furthermore, the trial court found that there was no discussion regarding the quality or quantity of water between Aspen Drilling and Hayes. Thus, the record supports the trial court's findings that there was no express or implied warranty. We will not disturb these findings on review.

Hayes next contends that Aspen Drilling violated Colorado law pertaining to the drilling of water wells and, therefore, should not be allowed to recover under a breach of contract theory. We disagree.

■ If a contractor is required to have specific licenses and permits to undertake work, the contractor cannot recover compen-

sation for its services when the contractor fails to obtain such licenses or permits. *Benham v. Heyde,* 122 Colo. 233, 221 P.2d 1078 (1950). And, pursuant to § 37–91–101, C.R.S. (1993 Cum.Supp.), all well construction and pump installation contractors are subject to state regulation. *See* Water Well Construction & Pump Installation, 2 Code Colo.Reg. 402–2.

■ Hayes contends that Aspen Drilling failed to obtain permits for drilling a water well. Aspen Drilling claims that it obtained the proper permits for drilling a test well. It asserts that the purpose of the test well drilled on Hayes' property was to gather information and this purpose is specifically authorized by water well regulations to ensure that the well would produce water of a sufficient quantity and quality. We agree with Aspen Drilling.

Aspen Drilling presented testimony from a representative of the State Engineer's Office, who testified that there was no indication that Aspen Drilling had violated any statute or regulation. Moreover, the record demonstrates that the State Engineer's Office issued Aspen Drilling a permit prior to drilling.

The trial court found that there was no credible evidence that Aspen Drilling had violated any of the water regulations. Our review of the record confirms that finding.

■ Finally, Hayes contends that Aspen Drilling agreed to drill a test hole for free if no water was found. Aspen Drilling presented testimony that no well drilling company could remain in business by making such promises. Accordingly, the trial court found, and we agree, that the parties' contract contemplated payment by Hayes to Aspen Drilling, regardless of whether the test hole drilling produced usable water.

Accordingly, we affirm the trial court's application of Article 24 and its ruling on the breach of contract claim.

Judgment affirmed.

CRISWELL and DAVIDSON, JJ., concur.