FOLSOM V. CRAGEN ET AL.

1. Where plaintiffs performed work on a mine after defendant's deed thereto, which she claimed was in reality a mortgage, was recorded, under a contract with her husband and another, who were not her agents, and the only evidence tending to connect her with the work was that in a conversation with plaintiffs she said her husband wanted the mine worked and he would see that they were paid, plaintiffs were not entitled to a lien as against her, under General Statutes, 1883, §§ 2131, 2137, giving mechanics and miners a lien for work done on real estate under a contract with the owner of the premises.

2. And defendant's deed, if in fact a mortgage, being recorded before the plaintiffs' contract was made or work commenced thereunder, would, under General Statutes, 1883, section 2149, take precedence of the mechanic's lien.

*Appeal from Clear Creek County Court.*

THE facts are stated in the opinion.

Messrs. C. C. POST and A. D. BULLIS, for appellant.

Messrs. MORRISON and FILLIUS, for appellees.

DE FRANCE, C.   The appellees, claiming a lien upon a mine by virtue of the law allowing liens to mechanics and others, and their compliance therewith, for work and labor done and performed by them upon such mine, under an alleged contract with the owners thereof, brought this action to enforce the said lien.   The appellant, Emugene Folsom, her husband, De Witt C. Folsom, and one Jacob M. Miller were made defendants to the action.   The contract to do such work and labor is alleged to have been made by appellees with appellant and the said Miller, and was made about the 1st of July, 1884. The mine in which the work was done had been conveyed by the said De Witt C. Folsom to the appellant by a deed absolute in form, which was recorded in October, 1883.   De Witt C. Folsom and Miller made no defense,

but the appellant answered, denying the contract, and alleging that the said deed of conveyance from her husband to her was a mortgage, given to secure the payment of a loan of $2,000, and interest, made by her to her husband, and that the appellees had knowledge thereof at the time of making said contract. By their replication the appellees denied such knowledge. The trial was to the court, and a decree was rendered authorizing the sale of said mine to satisfy the claim of appellees, which was found and declared to be a lien upon said mine prior to the mortgage lien held by appellant. The evidence failed to show that the appellant was a party to the contract, or that she had authorized the work to be done. As appears from the testimony, the defendants Miller and D. C. Folsom were in possession of the mine, and made the contract on their own behalf with appellees. By the decree rendered it is evident that the court regarded Miller as the only defendant liable under the contract; for it says that he owes the indebtedness, and provides for a personal judgment against him for any balance unsatisfied by a sale of the mine. After the work was partly done the appellees had a conversation with the appellant at her residence, her husband being absent at Pueblo, and they each testify that the conversation related to the mine and the contract, and that she said her husband wanted the work to continue, and that she wanted it continued. The appellee Bigelow says: "Mrs. Folsom then asked us if we were going back to work. I told her we would if everything was all right. She said her husband would see that we were paid for our work, and that they had put too much money into the mine to lose it." This is the only evidence which tends to connect her with the subject-matter of the contract or work. The contract was to run an adit fifty feet at a price of $6 per foot. When they had run ten feet, they went to Miller, saying they could not make wages at that price; and Miller thereupon agreed to pay them at

the rate of $7 per foot for the remaining forty feet. The appellees say that on this occasion Miller told them that appellant desired to see them; and that they then called to see her, and had the conversation testified to. In her testimony she denies having told Miller that she wanted to see appellees; says that she was not in possession of the mine; that her husband was not her agent; that she did not know the terms of the contract, or the price to be paid; that she had no recollection of the appellees telling her what the terms and price were, and that she did not think they did so; that she said to them that her husband was in Pueblo, and that she was satisfied he wanted the mine worked, and, if at home, would so request plaintiffs; and that she had no recollection of asking the plaintiffs to go back to work upon the mine, and did not think that she had done so. Cragen testified, in rebuttal, that appellant asked them what price they were to receive for the work, and that he replied $7 per foot. Appellant's husband testified that she was never at the mine; and that he told the appellees, when the contract was made, that he was the owner of the mine. The appellees admitted in their testimony that appellant was not present at the making of the contract, nor at the mine during the progress of the work; and that they had, just prior to the making of said contract, completed the work under another contract on said mine, for which Mr. Folsom, the husband, had paid them. And Cragen says in his testimony: "I always believed, up to the time we filed a lien upon the mine, that De Witt C. Folsom and J. M. Miller were the owners of the mine." The appellees did not file their statement claiming a lien until after the work was completed under said contract.

This is all the evidence which has any material bearing upon the question to be decided here. The only question for our decision is whether the court, after finding that the appellant was not a party to the contract, and was not personally liable thereon, erred in subject-

ing her rights and interest in the said mine to a sale to satisfy the claim of the appellees. That it did err in this admits of no doubt. The deed from her husband to the appellant was upon record long before the contract was made which forms the basis of the lien claimed by the appellees. They then had constructive notice, at least, that the appellant was the absolute owner of the mine. Mr. Folsom, the husband, informed them, when the contract was made, that he himself was the owner of the mine. The appellees were then bound, if they sought to affect the interest of appellant, to inquire as to what her rights were. They failed to do so, but acted upon the belief, even after the conversation with appellant, that her husband and Miller were the owners of the mine. There was nothing said in that conversation as to the ownership of the mine, and, as testified to by Bigelow, the appellant said to appellees that her husband would see that they were paid for such work; thus showing that she did not intend to obligate or render herself liable to pay for the same, or to subject her interest in the mine to its payment. It cannot be said that appellant concealed from appellees the fact that she had an interest in the mine. She had informed the public of her rights by placing her deed upon record, and was under no obligation to inform the appellees, or any one else, that her rights were other than those purported by such deed; at least without inquiry being made of her concerning the same. The testimony of the appellees that they had no knowledge of the appellant's rights cannot avail them. They were bound by the record notice. Unless the appellant was a party to the contract, or adopted the same, and thus made it her own contract, her rights cannot be affected thereby. The principal contract must be with the owner. Secs. 2131, 2137, Gen. St. 1883; *Mellor v. Valentine*, 3 Colo. 255; Phil. Mech. Liens, § 225. The appellant's deed, even if a mortgage, was recorded before the contract was made, or the work commenced there-

under, and would take precedence of the mechanic's lien. Sec. 2149, Gen. St. 1883; *Tritch v. Norton*, 10 Colo. 337.

A new trial should have been granted, and the judgment must be reversed.

RISING and STALLCUP, CC., concur.

PER CURIAM.   For the reasons assigned in the foregoing opinion the judgment of the county court is reversed and the cause remanded for a new trial.

*Reversed.*