JOHNSTON v. BENNETT ET AL.

1. MECHANIC'S LIEN.

In order to establish a mechanic's lien upon realty, the work done or material furnished must have been done or furnished under a contract made with the owner of the land, his agent or trustee.

2. SAME.

A mechanic's lien is created by statute, and cannot be restricted or extended by the acts of the contracting parties. A party is powerless to charge lands of which he is not the owner or in which he has no interest with a mechanic's lien, and is equally powerless to charge his individual property with such a lien for the improvement and betterment of land belonging to others.

3. SAME—LIMITATION.

An action to foreclose a mechanic's lien must be commenced within six months after the filing of the statement, and it must be against all persons against whom priority of lien is claimed. To establish a lien as superior to an incumbrance, the *cestui que trust* and the trustee must be made parties within that time.

*Appeal from the District Court of Pueblo County.*

Previous to July 15, 1891, Nettie Earhart was the owner of three lots in block 14 of Craigs addition to the city of Pueblo as originally surveyed and platted, the three lots fronted on 14th street; she had them resurveyed and divided into four lots, the fronts being on Conley street. The north lot lying on 14th street and fronting on Conley street, she sold to Jacob S. Johnston, the next, adjoining it on the south, to Courts; the next to Joseph W. Johnston; and the fourth to Stewart; conveyances were made to each of the respective parties on July 15, 1891. On the next day (July 16),

and on different dates up to and including July 27, each of the purchasers executed to one Ferris, trustee, a deed of trust of the parcel by him purchased to secure the payment of $2,000.

By the agreement with the parties loaning the money, four houses, alike in size and construction, were to be immediately built, one upon each parcel; the work of building was immediately commenced.

On July 16, Bennett & Co. (appellees) contracted with Joseph W. Johnston, alone, to do the plumbing upon the four houses, under which appellees furnished labor and material to the amount of $814, the work having been commenced on July 16 by excavating and putting in a supply pipe diagonally across 14th and Conley streets at their intersection, and continued on its course until it intersected the east line of the Courts lot near the center on the street, then running west some 50 feet to nearly the middle of the lot where a yard hydrant was put in on the Courts lot; this was completed on the 17th of July; about six weeks then elapsed before further work was done.

On September 17, Joseph W. Johnston became the owner of the Jacob S. Johnston lot, on September 19, of the Stewart lot, and on February 5, of the Courts lot.

There is no allegation of the date the contract was completed, nor any evidence of the fact, but on the 18th day of December, 1891, appellees filed a lien upon the property for the sum of $814. So we infer that the contract was completed before that time. A decree of foreclosure was obtained in the lien suit and, on March 25, 1892, the property sold under such decree and bought by appellees for the sum of $864.21. On May 14, 1892, Edward Ferris, trustee, sold each and all of the parcels or lots under the respective trust deeds and the property was purchased by appellant. At the time of the institution of this suit he had sold and conveyed the north parcel and claimed the title to the other three.

This suit was brought by appellant to quiet the title to the property, alleging that the title of appellees was invalid.

1st. That the houses were separate and distinct, built by four separate individual owners, on four separate and distinct parcels of land. That the contract was made by one individual owner, and the proceeding to enforce the liens against the four different properties was only instituted and prosecuted against the contracting owner, and decree taken against all the properties jointly.

2d. That the trust deeds under which appellant acquired title were prior in point of time and superior to the mechanic's lien.

3d. That the lien was barred by failure of appellees to bring suit within the six months prescribed by law.

Defendants answered, admitting the facts as above stated, but alleged that all the property was bought and paid for by Joseph W. Johnston, that he was the equitable owner and that the conveyances were made to the others, naming them, at the request of Joseph W. Johnston, and that they had no interest except the naked, legal title; that the lots were in fact bought and paid for by Johnston.

A trial was had to the court. The part of the finding necessary to be reviewed and the judgment of the court was as follows:

" That said new lots were sold to and paid for by the four respective parties to whom they were conveyed by said Earhart out of the proceeds of their respective loans.

" That the contract for plumbing was entered into by Bennett & Co. and Joseph W. Johnston, acting for himself and the other respective owners, and that the first work was done under said contract on July 16, 1891.

" That a lien was subsequently filed for said plumbing on lots one, two and three, block 14 Craigs addition, in which Joseph W. Johnston is named as the sole owner.

" That suit was subsequently brought for the foreclosure of said lien, in which Joseph W. Johnston is made sole defendant.

" That a decree was entered by default in favor of Bennett & Co. for $837.50 and costs, and said property afterwards

sold by the sheriff for $864.21, and was bid in by J. H. Bennett.

"Wherefore it is adjudged by the court that J. Will Johnston is the owner of the south half of the north half and the south half of the south half of said lots 1, 2 and 3.

"That lien of Bennett & Co. as to the north half of the south half of said lots, (the new lot conveyed by Earhart to Joseph W. Johnston,) is prior and superior to the title of plaintiff, and that plaintiff is entitled to the right of redemption from said lien and sale thereunder, and that he pay into court for the use of J. H. Bennett the sum of $837.30, with interest and costs, within 90 days, and in default thereof title be quieted in Bennett.

"That costs be paid, one fourth by plaintiff and three fourths by defendants."

Mr. E. E. HUBBELL, for appellant.

Mr. L. A. CRANE, for appellees.

REED, P. J., delivered the opinion of the court.

The court was correct in finding that the lots were sold to and paid for by the four respective owners. It is established by evidence that the four parties contracted with appellant and Ferris, trustee, at the time of making the loans that they would each erect a house; that the loans by each of $2,000 were made individually, and separate notes and deeds of trust given; that out of the money so borrowed each paid $850 for his parcel of land.

The finding that the contract for the plumbing was made by Joseph W. Johnston, alone, with appellees, was also correct, but the further finding that Johnston acted "for himself and the other respective owners" is not sustained by any evidence whatever, and can only be inferred from the apparent acquiescence of the other parties in permitting the work to be done.

In order to make a contract upon which a lien upon the realty can be maintained, it is necessary that there should be a contract, and that the contract be made with the "owner of any land, his agent or trustee" (Mills Stat., sec. 2867). At the time of making the contract Joseph W. Johnston was only the owner of one of the four different parcels. In order to sustain the lien it must have been shown that he was the agent of the other three; there was no such evidence nor any attempt to prove agency; hence, Johnston could not contract on behalf of the other three in such manner as to create a lien against their property. This was recognized by the court, and to avoid the effect the parcel of land owned by Johnston alone was charged with the cost of the entire plumbing of the four different houses. This finding was erroneous.

By the statute (Mills Stat., sec. 2867) the lien is restricted to the land of the contracting owner or his interest in it at the time of making the contract, and is further restricted to the work done "*upon such land.*" The different parcels of land were held in severalty by the respective owners at the time of making the contract; and although by acquiescence and receiving the benefit of the work the other owners might have adopted the agency to such an extent as to render themselves liable to Johnston for their respective shares, and the Johnston contract may have been such as to charge him. in a suit against him by appellees for the work done upon the other properties, the remedy by lien being purely statutory and to be strictly construed, Johnston was powerless to charge lands of which he was not the owner and in which he had no legal interest with a lien; he was also equally powerless to charge his individual property with a lien for construction, improvement and betterment of land belonging to others. The lien is created by statute and cannot be restricted or extended by the acts of contracting parties. See *Mellor v. Valentine*, 3 Colo. 258; *Tabor v. Armstrong*, 9 Colo. 287; *Folsom v. Cragen*, 11 Colo. 208; *Burkhart v. Reising*, 24 Ill. 531; *Hill v. Bishop*, 25 Ill. 350; *Paulson v. Manske*, 126 Ill. 75; Phillips on Mech. Liens, chap. 2, and cases cited in notes.

The equitable ownership of the property in Johnston at the time of the making of the contract was not established by the evidence, consequently we are not required to decide what the effect would have been if it had been established. The fact that Johnston afterwards became the owner of all the different parcels is unimportant, as the statute fixes the status as of the date of the contract.

Counsel for appellees contends in argument, 1st, that the equitable owner of land may make a contract upon which a lien may be predicated.

2d. That where one makes the contract for himself and others for the construction of buildings, where authorized by the others, the property of such others is chargeable with the lien, and that if such owners without objection permit the improvement " *a mechanic's lien is created upon the buildings and land upon which they are situated,*" and several authorities are cited supposed to sustain the contention. If such position is correct it is fatal to the judgment in this case, as it would establish several and distinct liens upon the different parcels, while in the judgment the entire bills for construction on the different parcels were charged upon the individual property of the contracting party.

The proceedings to enforce the liens as shown should have been distinct and separate suits against each of the four owners, and each suit should have made appellant and the trustee, Ferris, parties. They claiming title by virtue of the deeds of trust were indispensable.

The statute expressly provides " no lien claimed by virtue of this act shall hold the property longer than six months after filing the statement firstly described in section ten, unless an action be commenced within that time to enforce the same." Mills Stat., sec. 2887.

That the suit must embrace all persons against whom priority of lien is claimed, see *Dumphy v. Riddle,* 86 Ill. 22; *Crowe v. Nagle,* 86 Ill. 437 ; *Graw v. Bayard,* 96 Ill. 146.

To establish a lien as superior to an incumbrance, the *cestui que trust* and the trustee must be made parties within six

months. *Lamb v. Campbell*, 19 Ill. App. 272; *Clark v. Manning*, 95 Ill. 580.

Under the statutes and the decisions the questions for determination in this suit should have been determined in the suit to enforce the lien, the right of which was dependent upon the respective rights of parties and the question of priority.

It follows that the finding and judgment in this case must be reversed.

*Reversed.*