No. 18,153.

BRANNAN SAND AND GRAVEL COMPANY *v.*
SANTA FE LAND AND IMPROVEMENT COMPANY, ET AL.
(332 P. [2d] 892)

Decided December 8, 1958.

Mr. H. Shields Mason, Mr. Maurice Reuler, for plaintiff in error.

Messrs. Grant, Shafroth, Toll & McHendrie, Mr. Charles H. Haines, Jr., for defendant in error Santa Fe Land and Improvement Co.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

This action involves interpretation of the Colorado General Mechanics' Lien Statute, particularly C.R.S. '53, 86-3-1 and 86-3-17.

The parties appear here as in the trial court. The facts are stipulated. Plaintiff in error will be referred to as Brannan, and defendant in error as the Land Company. Other parties involved in the work and labor performed but not in the mechanics' lien action will be referred to by name.

Brannan was a subcontractor engaged by Harris Constructors, Inc., the general contractor, to surface and pave a 1567-foot roadway. The paved area was on and traversed three separate pieces of property, and was constructed to extend the east lane of Quivas Street northward so as to connect with a newly constructed warehouse of Sears-Roebuck and Company. At the southern extremity where the pavement connected with the then existing Quivas Street, a portion was on a right-of-way belonging to the City and County of Denver. It then extended northward across land owned by the defendant Land Company. The north portion curved westward into the Sears-Roebuck property. The Land Company was obligated, under contract with Sears-Roebuck, to pave and pay for the entire strip of pavement provid-

ing ingress and egress from the latter's warehouse to Quivas Street. After completion of the work the Land Company paid Harris Constructors, Inc., the general contractor, in full. The Harris Company was declared a bankrupt and none of the moneys paid to it were ever paid to Brannan. The principal contract was not recorded. In apt time and in full compliance with the mechanics' lien statute, Brannan filed a lien upon the Land Company property for the entire amount of its subcontract. Liens were not filed on either the City and County of Denver property or the Sears-Roebuck property as under the statute none could be. Because the cost of the roadway was easily apportioned on a square foot basis among the three properties, the trial court allowed to Brannan a lien on the Land Company property only for the material and labor apportioned to the paving on Land Company property. This amounted to $3,138.00 out of the entire contract price of $6,662.30.

On the above facts the trial court made the following conclusions of law:

1. The land of defendant Santa Fe Land Improvement Company, described in plaintiff's complaint, is not subject to a lien for improvements constructed by plaintiff on other lands.

2. The mechanics' lien law, Article 96-3, C.R.S. 1953, does not provide for a lien upon land of the City dedicated for street purposes. Street improvements upon such public lands cannot be the subject of a mechanics' lien.

3. Harris Constructors, Inc., as the principal contractor under the contract and statutory agent under Section 86-3-1, C.R.S. 1953, had at most authority only to create a lien for improvements of plaintiff upon the land of the defendant Santa Fe Land Improvement Company; the said contractor as a statutory agent was without authority to charge defendant's land with a statutory

lien for improvements upon land owned by third persons.

4. The mechanics' lien law contained in Article 86-3, C.R.S. 1953, does not purport to create personal liability of a landowner for obligations incurred by a contractor in the performance of his contract but only authorizes the creation of a lien for improvements upon the land of the owner. No personal liability of the Santa Fe can result from said statute for work performed by plaintiff under its subcontract.

First Question to be Determined:

*Does the Mechanics' Lien Statute, supra, subject defendant in error's land to a lien for the entire contract price involving improvements constructed on other lands?*

This question is answered in the negative.

Omitting the verbiage in 86-3-1 not pertinent to the question, the statute provides:

" * * * subcontractors * * * shall have a lien *upon the property* upon which they have rendered service or bestowed labor or for which they have furnished materials * * * *for the value of such services rendered or labor done or material furnished.* * * *." (Emphasis supplied.)

■ The above basic provision of the statute has been retained virtually intact as it appears in Mills Annotated Statutes (1891), vol. 2, sec. 2867, down to the present. In the express words of the statute, containing, as we believe, no ambiguity, there are two limitations on the lien involved. First, it is granted only upon the property upon which the labor, services and materials are bestowed or rendered; second, only to the extent of the *value* of the labor, services and material *rendered upon the property.* The language of the statute cannot support a claim for the value of labor or material rendered or furnished upon land other than that of defendant because it did not enhance the value of defendant's property.

The precise question to be determined here was answered as early as 1895 in *Johnston v. Bennett,* 6 Colo. App. 362, 40 Pac. 847. In that case Bennett, a plumbing subcontractor, had at the instance and request of the owner of one tract of land performed plumbing work on the latter's lot and three adjacent lots in the city of Pueblo. On trial the court included in the lien against the plot owned by Johnston, the party contracting for the entire plumbing job, the value of services and material rendered under the contract for the other three parcels as well. In reversing the trial court the court of appeals said:

"By the statute (Mills Stat., sec. 2867) the lien is restricted to the land of the contracting owner or his interest in it at the time of making the contract, and *is further restricted* to the work done *'upon such land.'* * * * the remedy by lien being purely statutory and to be strictly construed, Johnston was powerless to charge lands of which he was not the owner and in which he had no legal interest with a lien; he was also equally powerless to charge his individual property with a lien for construction, improvements and betterment of land belonging to others. * * * " (Emphasis supplied.)

Brannan's counsel, recognizing at least a portion of the principles enunciated in the foregoing (although perhaps not having *Johnston v. Bennett,* supra, expressly in mind) did not attempt to claim the lien upon the whole roadway but filed only on the segment located upon the Land Company's property. By statute, therefore, the inquiry of the trial court was limited to determining what labor, services and material were rendered by plaintiff to the property upon which the lien was claimed. The court was correct in finding that no labor, material or services were rendered by the plaintiff to the property identified in the lien statement beyond the stipulated value of $3,138.00.

Second Question to be Determined:
*Does the Colorado Mechanics' Lien Statute impose*

*upon the landowner personal liability for the entire
amount of the contract?*

This question is answered in the negative.

Here again the language of the statute was interpreted
as early as 1893. A portion of the statute for which plain-
tiff urges us to direct judgment in personam against de-
fendant is C.R.S. '53, 86-3-17, as follows:

" * * * If, on the trial of a cause under the provisions
of this article, proceedings will not support a lien, the
plaintiff and all lien claimants entitled thereto may pro-
ceed in judgment as in an action on contract, and execu-
tions may issue as in such cases provided, and said judg-
ment or judgments shall have all the rights of a judg-
ment in a personal action."

 This section of the statute is a reenactment in
its entirety of the Session Laws of 1893, c. 117, sec. 15. It
was clearly interpreted in *Lowrey v. Svard,* 8 Colo. App.
357, 46 Pac. 619. In that case upon suit to foreclose a
mechanics' lien a subcontractor, obtained by the prin-
cipal contractor to do the stone and mason work in the
foundation of a building, filed a lien upon the property.
The lien having been adjudged invalid, personal judg-
ment was entered in favor of the subcontractor and
against the executrix of the estate of the defendant land-
owner (he having died prior to institution of the fore-
closure action). The court in reversing the judgment
announced this sound rule of construction:

" * * * The only legitimate construction to be given
that section of the statute is one which will permit the
enforcement of the evident legislative intent, which
manifestly was to enable the plaintiff to recover when-
ever, irrespective of the lien act, he is entitled to main-
tain his action against the defendant. * * *

" * * * but when, as in this case, *there is no privity
whatever between the plaintiff and the defendant, and
no contract established between them,* the plaintiff can-
not recover even by virtue of that general provision of
the lien act. This has been established in California

under a statute almost identical with ours, and is recognized by the leading authorities on the subject of mechanics' liens. *The Southern Cal. Lumber Co. v. Schmidtt,* 74 Cal. 625; *Santa Clara Valley M. & L. Co. v. Williams,* 31 Pac. Rep. 1128; Phillips on Mechanics' Liens, sec. 447.

"Under the lien statutes *no judgment in personam can be entered against a defendant* unless it be expressly authorized by statute. The Colorado statute only permits it when the plaintiff proves a contract on which he may recover regardless of the lien act. According to the record, these laborers were employed by the subcontractors, between whom and the owner of the premises there was no contract. Having failed to establish facts which would entitle him to recover in an action in assumpsit, a personal judgment could not be entered against the estate. The language of the act does not compel any such construction; it does not appear to have been the intent of the legislature. There is no principle of law by which the clause cited can be held to confer on the plaintiff the right to a personal judgment." (Emphasis supplied.)

Later Colorado cases confirm the agency of the prime contractor under 86-3-1 and 86-3-2 as a limited agency for the purpose of creating a lien only. See *Farmer's Irrigation Co. v. Kamm,* 55 Colo. 440, 135 Pac. 766; *Rice v. Cassels,* 48 Colo. 73, 108 Pac. 1001; *Kennicott-Patterson v. Modern Co.,* 26 Colo. App. 135, 141 Pac. 144.

Accordingly, the judgment is affirmed.

MR. CHIEF JUSTICE HOLLAND not participating.