IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

MARKHAM CONTRACTING CO., INC.,
*Plaintiff/Appellant,*

*v.*

CAHAVA SPRINGS PHASE I, INC., ET AL.,
*Defendants/Appellees.*

No. CV-25-0036-PR
**Filed June 17, 2026**

Appeal from the Superior Court in Maricopa County
The Honorable Erik Thorson, Judge
No. CV2021-054458
**REVERSED AND REMANDED**

Memorandum Decision of the Court of Appeals,
Division One
No. 1 CA-CV 22-0746
**VACATED**

COUNSEL:

Karen A. Palecek, James J. Palecek, Palecek & Palecek PLLC, Scottsdale;
Thomas L. Hudson, Eric M. Fraser (argued), John S. Bullock, Osborn
Maledon, P.A., Phoenix, Attorneys for Markham Contracting Co., Inc.

Timothy J. Berg (argued), J. Christopher Gooch, Tyler D. Carlton,
Fennemore Craig, P.C., Phoenix, Attorneys for Cahava Springs Phase I, Inc.,
et al.

Michael J. Holden, Jackson C. Pittman, Holden Willits PLC, Attorneys for

Amici Curiae American Subcontractors Association and American Subcontractors Association of Arizona

———————————

CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which VICE CHIEF JUSTICE LOPEZ, JUSTICES BOLICK, BEENE, MONTGOMERY, KING, and CRUZ joined.

———————————

CHIEF JUSTICE TIMMER, Opinion of the Court:

**¶1**         In *Wang Electric, Inc. v. Smoke Tree Resort*, the court of appeals held that a property owner is not unjustly enriched by retaining unpaid-for leasehold improvements made at its tenant's direction unless the owner acted improperly.   230 Ariz. 314, 320 ¶¶ 15–17 (App. 2012).   We adopt *Wang Electric*'s holding and consider whether its improper-conduct requirement extends beyond the landlord-tenant-contractor scenario.   We conclude it does not.

### BACKGROUND

**¶2**         Cahava Springs is a master-planned residential community under development in the desert foothills of Cave Creek, Arizona.   The developer and related entities (collectively, "Landowners") own all real property within the community.   Upon the Landowners' petition, the Town of Cave Creek formed the Cahava Springs Revitalization District (the "District"), a tax-levying public improvement district organized under A.R.S. §§ 48-6801 to -6819 (the "Act") to finance and build public infrastructure, including roads and water lines, within Cahava Springs. The District's governing board consisted of three Landowner representatives, as the Act requires.   *See* A.R.S. § 48-6802(C)(1). Following a District-wide election, the Landowners authorized the District board to finance the infrastructure by levying special assessments against all taxable property in the District—capped at $105,000 per lot—and issuing and selling special assessment bonds, which are repaid from those assessments.   *See* A.R.S. §§ 48-6812, -6815, -6818 (governing financing, assessments, and elections).

¶3        The Landowners and the District then entered into a development agreement to implement that financing structure and acquire and construct the improvements.   The Landowners' obligations under the agreement would serve as a covenant, be recorded in the county recorder's records, and run with the land.   Upon completion of the improvements, the District would dedicate them to the Town of Cave Creek.

¶4        To fulfill its agreement with the Landowners, the District entered into an agreement with Markham Contracting Co., Inc. ("Markham") to construct the infrastructure improvements for about $13 million.   The Landowners were not parties to that agreement.   After substantial construction of the improvements, a dispute arose between the District and Markham.   The District then stopped paying Markham, and both parties made claims against each other.   The claims went to arbitration, which produced a judgment of approximately $6.5 million in Markham's favor against the District.   That judgment is now in collection proceedings.   The limited record here does not reflect whether the improvements were completed and dedicated to the Town of Cave Creek.

¶5        Subsequently, Markham sued the Landowners, among other parties, for unjust enrichment, seeking the $6.5 million it had been awarded in the arbitration.[1]   Markham alleged that (1) the Landowners had not paid all assessments to fund payments to Markham, (2) they had received an uncompensated benefit from the infrastructure improvements, and (3) it would be unjust to permit the Landowners to retain that benefit without paying for it.

¶6        The Landowners moved to dismiss the complaint pursuant to Arizona Rule of Civil Procedure 12(b)(6).   Relevant here, they argued that the complaint failed because it did not allege any improper conduct, as required by *Wang Electric*.   Markham responded that no such allegation was necessary because *Wang Electric* requires improper conduct only for unjust enrichment claims brought against a property owner for tenant improvements.   Markham also moved for leave to file a second amended complaint, which removed the other parties as defendants.

¶7        The superior court granted the motion to dismiss.   It agreed with the Landowners that *Wang Electric* required Markham to allege and

---

[1]  Markham intends to drop its claims against the other parties, so we do not describe those claims in detail.

prove improper conduct to hold them liable for unjust enrichment, and it found that the proposed second amended complaint did not cure that deficiency. The court, therefore, dismissed the first amended complaint and denied leave to file a second amended complaint.

**¶8** Markham appealed, arguing that *Wang Electric*'s improper conduct requirement only applies to unjust enrichment claims in the landlord-tenant context. The court of appeals agreed, reversed the superior court's judgment, and granted Markham leave to amend its second amended complaint. *Markham Contracting Co. v. Cahava Springs Phase I, Inc.*, No. 1 CA-CV 22-0746, 2025 WL 337535, at *4 ¶¶ 14–15 (Ariz. App. Jan. 30, 2025) (mem. decision).

**¶9** We granted the Landowners' subsequently filed petition for review to decide whether improper conduct is required to maintain an unjust enrichment claim outside the landlord-tenant-contractor context, an issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶10** We review the superior court's dismissal of Markham's first amended complaint de novo because it presents issues of law. *See City of Mesa v. Ryan*, 258 Ariz. 297, 299 ¶ 8 (2024). Dismissal under Rule 12(b)(6) is proper only if, as a matter of law, Markham would not be entitled to relief even if the alleged facts are proven true. *See Coleman v. City of Mesa*, 230 Ariz. 352, 356 ¶ 8 (2012). In making this determination, we assume the truth of the complaint's well-pleaded factual allegations and indulge all reasonable inferences from those facts. *Id.* ¶ 9. We give no weight to conclusory statements. *See id.*

**¶11** An unjust enrichment claim "provides a remedy when a party has received a benefit at another's expense and, in good conscience, . . . should compensate the other." *Wang Elec.*, 230 Ariz. at 318 ¶ 10; *see also Murdock-Bryant Constr., Inc. v. Pearson*, 146 Ariz. 48, 53 (1985) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other." (quoting Restatement (First) of Restitution ("Restatement") § 1 (1937))). The remedy is flexible and available "whenever the court finds that 'the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity'

4

to make compensation for benefits received." *Murdock-Bryant*, 146 Ariz. at 53 (quoting D. Dobbs, Law of Remedies § 4.2 at 235 (1st ed. 1973)).

¶12 To state a claim, Markham had to allege five elements: (1) the Landowners' enrichment, (2) Markham's corresponding impoverishment, (3) a causal link between them, (4) no justification for either, and (5) no available legal remedy. *See Wang Elec.*, 230 Ariz. at 318 ¶ 10; *see also Murdock-Bryant*, 146 Ariz. at 53 (describing the essence of the inquiry as whether, under the facts, the defendant received a benefit that is unjust to retain without compensating the plaintiff for the value received). Only the fourth element is in dispute: whether Markham sufficiently alleged that the Landowners' enrichment, at its expense, was unjustified.

¶13 The Landowners argue that their retention of the benefits Markham conferred was justified because they were not parties to the District's contract with Markham and did not engage in any improper conduct. Markham responds that the enrichment was unjustified because the Landowners arranged for the District to improve their land and then failed to pay for those improvements. Markham further contends that no showing of improper conduct is required and that, in any event, the Landowners acted improperly by petitioning to create the District as a financing vehicle, agreeing to pay assessments to fund the construction, and then failing to pay enough in assessments to cover Markham's work. Whether Markham must allege and prove improper conduct to establish the absence of justification turns on whether we adopt the court of appeals' analysis in *Wang Electric* and if so, how broadly.

## A. *Wang Electric* Requires Improper Conduct To Hold A Landlord Liable In Unjust Enrichment For Tenant Improvements

¶14 *Wang Electric* arose from a construction dispute involving a resort property owner (Smoke Tree), its tenant (REM), a general contractor (KAI), and several subcontractors. *See Wang Elec.*, 230 Ariz. at 316 ¶¶ 1–2. Smoke Tree leased restaurant space to REM under a lease that required REM to remodel the space using plans Smoke Tree approved, with Smoke Tree agreeing to reimburse up to $840,000 of REM's costs. *Id.* ¶ 2. REM hired KAI as general contractor for an approximately $2 million remodel, and KAI, in turn, hired several subcontractors. *Id.* at 316–17 ¶ 3. Although Smoke Tree did not contract with KAI and its reimbursement obligation under the lease ran only to REM, Smoke Tree paid roughly

$790,000 directly to KAI before progress payments stopped. *Id.* at 317 ¶¶ 4–5. Relevant here, the subcontractors sued, and the superior court entered summary judgment for them and against Smoke Tree on their unjust enrichment claims, reasoning it would be unjust for Smoke Tree to retain the benefit of the improvements without compensating the subcontractors. *Id.* ¶ 7.

¶15 The court of appeals reversed. *Id.* at 316 ¶ 1. It began by surveying Arizona's existing unjust enrichment case law involving owners, contractors, and subcontractors, observing that those cases generally fall into two categories: those in which the owner has fully paid the general contractor and those in which it has not. *Id.* at 318 ¶ 12. In the first category, recovery is unavailable because an owner who has paid in full has not been unjustly enriched. *Id.* In the second, recovery is available because allowing the owner to retain the benefit without paying for it would be unjust. *Id.* at 318–19 ¶ 12. The court then observed that neither category addressed the situation before it: an unjust enrichment claim against an owner for improvements ordered not by the owner itself, but by its tenant. *See id.* at 319 ¶ 12.

¶16 To resolve whether an unjust enrichment claim is viable in that circumstance, the court looked to *DCB Construction Co. v. Central City Development Co.*, 965 P.2d 115 (Colo. 1998), which involved facts similar to those in *Wang Electric*. *See Wang Elec.*, 230 Ariz. at 319–20 ¶¶ 13--15. There, the Colorado Supreme Court relied on two principles to decide whether an owner was liable in unjust enrichment to a contractor who made improvements contracted for by a tenant. *See DCB Constr.*, 965 P.2d at 121. First, it cited the general rule that when a non-owner contracts for improvements to the owner's property but fails to pay, "the owner is not liable to the contractor or supplier unless he agreed to pay them." *See id.* (first quoting 3 Dan B. Dobbs, *The Law of Remedies*, § 12.20(3) at 473 (2d ed. 1993); then citing *Brannan Sand & Gravel Co. v. Santa Fe Land & Improvement Co.*, 332 P.2d 892, 895 (Colo. 1958) (explaining that when "there is no privity . . . between the [contractor] and the [owner], and no contract established between them" an owner cannot be liable for improvements)). That rule preserves an owner's freedom to choose its own contractual relationships and reflects the general principle that owners should not be compelled to enter into legal obligations with parties they never selected. *See id.* Second, the Colorado Supreme Court relied on Restatement § 110, which provides that "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to

6

restitution from the other *merely* because of the failure of performance by the third person." *See id.* (alteration in original).

¶17 Considering the general rule, the Restatement, and the weight of authority in other jurisdictions, the Colorado court concluded that an owner is not liable for tenant improvements simply because it owns the improved property and the tenant treated the contractor unjustly. *See id.* ("There must be more."). Otherwise, the owner would effectively become "an insurer of the risk assumed by contractors in extending credit to tenants." *See id.* at 122. The court, therefore, determined that a contractor demonstrates that an owner's retention of the benefit conferred is unjust if the contractor can show both the contractor's loss and some improper, deceitful, or misleading conduct by the owner. *See id.* at 121–22. Applying that framework, the court found that the owner there was not liable for unjust enrichment. *See id.* at 122–23. Although the owner had consented to tenant improvements, required them to conform to its specifications, and would retain them upon lease termination, it had neither created the impression that it would pay for the work nor engaged in any improper, deceitful, or misleading conduct. *See id.*

¶18 The *Wang Electric* court gave three reasons for adopting *DCB Construction*'s improper-conduct requirement. First, it aligned with Arizona's general rule that a subcontractor lacking privity with the owner cannot recover a personal judgment against the owner for unpaid work even if a mechanic's lien is enforceable against the property. *See Wang Elec.*, 230 Ariz. at 320 ¶ 15 (citing *Keefer v. Lavender*, 74 Ariz. 24, 25–26 (1952)). Second, Arizona courts also follow Restatement § 110. *Id.* Third, conditioning an owner's liability on its own conduct "comports with the Arizona-adopted principle that unjust enrichment should not be used to saddle entities with expenses they chose not to incur." *Id.* The court also noted that courts in other jurisdictions agreed with this analysis. *See id.* ¶ 15 n.5.

¶19 Applying this reasoning, the court held that Smoke Tree's retention of the improvements was not unjust because there was no allegation or evidence that Smoke Tree had engaged in improper conduct. *Id.* ¶ 16. It had not directly engaged KAI and then withheld payment knowing that doing so would harm the subcontractors, nor had it misled anyone about the source of payment. *Id.* The court rejected the superior court's reasoning that Smoke Tree's approval of the remodel plans rendered its retention of the benefits unjust, explaining that approving

7

plans to alter one's own property is an ordinary incident of ownership and cannot itself be deemed improper. *Id.* The court, therefore, held that a contractor hired by a tenant to make improvements to leasehold premises, or subcontractors retained by that contractor, may recover from the property owner on an unjust enrichment theory only when the owner has engaged in improper conduct. *Id.* ¶ 17.

¶20 *Wang Electric*'s reasoning is sound, and we adopt it as our own. We add an additional reason supporting its holding. The landlord with a residual interest in a lease that permits or requires improvements is not unjustly enriched by receiving the benefit of improved premises at the end of the term. It obtained what it was entitled to obtain under the lease: tenant-improved premises. *See* 3 Dan B. Dobbs, *The Law of Remedies*, § 12.20(3) at 474. Depending on the landlord's use of the property or the next tenant's needs, the improvements may or may not benefit the landlord. Regardless, its receipt of improved premises is a contractually bargained-for outcome rather than a windfall, which further explains why the law does not require a landlord to compensate the contractor or subcontractors who produced those improvements, absent some improper conduct on its part.

### B. *Wang Electric*'s Improper-Conduct Requirement Does Not Govern When An Owner Itself Arranges For Improvements And Pays No One For Them

¶21 The more pressing question here is whether *Wang Electric*'s reasoning extends to the circumstances here. It does not.

¶22 *Wang Electric* announced a rule exclusive to the landlord-tenant-contractor scenario. The court was explicit that it addressed a unique scenario that fell outside the more-typical circumstance in which the owner had arranged for others to improve its own property. *See id.* at 319 ¶ 12. To fill that gap, the court adopted *DCB Construction*'s improper-conduct requirement. *Id.* at 320 ¶¶ 15–17. Without such a requirement, the *Wang Electric* court warned, a property owner who merely leased space to a tenant would become an "unwitting guarantor[]" of whatever contracts the tenant chose to make. *Id.* ¶ 16; *see also DCB Constr.*, 965 P.2d at 120 (explaining that a specific rule is needed because tenants frequently contract for improvements and both landlords and contractors need more stability and predictability than what an ad hoc equity review

provides). That concern is the engine driving *Wang Electric*'s holding, and it arises only when the party who arranged for the improvements was a tenant, not the owner. *See Lewis v. Lewis*, 189 P.3d 1134, 1142–43 (Colo. 2008) (stating that *DCB Construction*'s improper-conduct requirement is specific to the landlord-tenant-contractor context and does not extend to unjust enrichment claims arising in other circumstances).

¶23 Also, the rationale for permitting a landlord to keep the benefit of its bargain does not extend to an owner who itself sought the improvements, agreed to fund them, and paid no one for the work that produced them. Such an owner cannot claim that its receipt of the benefit was a contractually anticipated outcome of its bargain with someone else. An owner who requested the improvements and then retained them without payment is in a materially different position than the landlord in *Wang Electric*.

¶24 Critically, *Wang Electric* recognized that the broader law of unjust enrichment continues to govern the circumstance where a property owner arranges for improvements to its own property through a third party but does not pay for them. *See Wang Elec.*, 230 Ariz. at 318–19 ¶ 12. The Landowners nonetheless contend that because *Wang Electric* drew support from Restatement § 110, *Keefer*, 74 Ariz. 24, and *Blue Ridge Sewer Improvement Dist. v. Lowry & Assocs.*, 149 Ariz. 373 (App. 1986) — none of which are limited to the landlord-tenant-contractor scenario — its improper-conduct requirement applies whenever an owner does not directly contract for improvements. *See Wang Elec.*, 230 Ariz. at 320 ¶ 15.

¶25 That reading misapprehends the role those authorities played. *Wang Electric* cited § 110 and *Keefer* for the general rule that a subcontractor lacking privity with an owner cannot recover a personal judgment against the owner for unpaid work. *See id.* It cited *Blue Ridge Sewer* for the principle that unjust enrichment cannot be used to saddle property owners with expenses they implicitly chose not to incur by declining to authorize the work at all. *See id.* The court did not rely on these authorities to foreclose unjust enrichment liability in every case lacking direct contractual privity.

¶26 Indeed, the court expressly recognized that unjust enrichment claims may be viable without a showing of improper conduct when an owner itself arranges for improvements and agrees to pay for them but then does not do so. *See id.* at 318–19 ¶ 12. And the right-to-choose principle

reflected in *Blue Ridge Sewer* protects owners from being forced into legal relationships they did not select; it has no application to owners who themselves sought the improvements, regardless of who was ultimately hired to perform them. *See Blue Ridge Sewer*, 149 Ariz. at 376–77. It is the broader law of unjust enrichment preserved by *Wang Electric*, not its improper-conduct requirement, that governs here.

### C. An Owner Who Seeks Improvements Performed Under Contract With A Third Party And Pays No One For Them Is Not Insulated From Unjust Enrichment Liability By The Absence Of Contractual Privity

¶27 The broader law governing unjust enrichment comes from *Murdock-Bryant*; *Flooring Systems, Inc. v. Radisson Group, Inc.*, 160 Ariz. 224 (1989); and similar cases, which recognized the viability of unjust enrichment claims against defendants who lacked contractual privity with the plaintiffs.

¶28 In *Murdock-Bryant*, Pearson, the primary contractor for the construction of a shopping center, provided a subcontractor, Murdock-Bryant, with inaccurate rock-quantity estimates that formed the basis for Murdock-Bryant's successful, but too-low, blasting bid. 146 Ariz. at 50–51. After the two entered into a subcontract, Pearson formed a joint venture with Wilbur to perform on Pearson's prime contract with the owner. *See id.* When Murdock-Bryant later discovered Pearson's error and realized it would have to blast far more rock than represented, it rescinded the contract and sued both Pearson and Wilbur in equity for restitution. *See id.* at 51–52. The question before the Court was whether Murdock-Bryant could recover against Wilbur given the absence of contractual privity, the fact that the joint venture was formed after Pearson's misrepresentation, and the undisputed fact that Wilbur had no knowledge of or involvement in the misrepresentation. *See id.* at 52. The Court held that restitution was available because Wilbur, as a joint venturer with a direct pecuniary interest in the completed shopping center, must have known that someone would have to perform the site preparation work, Murdock-Bryant did so, and Wilbur benefitted from it. *See id.* at 53–54.

¶29 The Court's reasoning in *Murdock-Bryant* illuminates what the unjustness inquiry actually requires. Whether retention of a benefit is

unjust does not turn on whether the defendant intended to compensate the plaintiff or whether the plaintiff intended the defendant to be the party to pay. *See id.* at 54. The duty to compensate for unjust enrichment "is an obligation implied by law without reference to the intention of the parties." *Id.* What matters instead is "that it was not intended or expected that the services be rendered or the benefit conferred gratuitously, and that the benefit was not 'conferred officiously.'" [2] *Id.* A subcontractor who performs pursuant to a contract and with the expectation of compensation is, by definition, neither acting gratuitously nor thrusting an unwanted benefit on the owner, so long as the owner sought, authorized, or acquiesced in receiving the improvements. The unjustness inquiry is, therefore, satisfied whenever an owner in that circumstance pays no one for the work.

¶30 *Flooring Systems* applied *Murdock-Bryant*'s reasoning and confirmed it in a more typical construction setting. There, CSA, as Radisson Group's agent, solicited Flooring Systems's bid on carpeting work for a hotel renovation and then accepted its bid. *See Flooring Systems*, 160 Ariz. at 225. Radisson Group's general contractor, Five Star Services, Inc., then entered into a subcontract with Flooring Systems for the same carpeting work. *See id.* After Flooring Systems completed its work, Five Star failed to pay the full amount due, and Radisson Group withheld final payment to Five Star because the subcontractors had not been fully paid. *See id.* at 225–26. Flooring Systems sued both Radisson Group and CSA for unjust enrichment, and they responded that Flooring Systems's subcontract with Five Star precluded any recovery against them. *See id.*

---

[2] An "officiously" conferred benefit is one "bestowed on another without the encouragement or even acquiescence of the person so enriched." *Benefit*, Black's Law Dictionary (12th ed. 2024) (def. 2). *Blue Ridge Sewer* illustrates the principle. There, an engineering firm performed design services for a sewer improvement district under a contract that was invalid because an insufficient number of property owners had signed petitions required by statute to authorize the work. *See Blue Ridge Sewer*, 149 Ariz. at 376. The court denied the firm's unjust enrichment claim, reasoning that because the property owners had implicitly chosen not to receive those services by declining to sign the petitions, any benefit conferred on them could not be considered unjust. *See id.* at 376–77. To apply the doctrine under those circumstances would be to saddle them with an expense they chose not to incur. *See id.*

**¶31** This Court disagreed. *See id.* at 227. Relying on *Murdock-Bryant*, the Court reasoned that Flooring Systems had not provided its work gratuitously or officiously, as evidenced by its subcontract with Five Star. *See id.* CSA had invited Flooring Systems to bid and then accepted that bid, and Radisson Group withheld final payment knowing that Flooring Systems had not been fully paid. *See id.* Based on these facts, the Court found it could not conclude as a matter of law that Radisson Group and CSA could justly retain the full benefit of Flooring Systems's work without paying for it. *See id.* The existence of an intervening subcontract did not change that calculus. *Id.* Because Radisson Group and CSA had paid no one for the work they received, whether their enrichment was unjust was a question that could not be resolved against the subcontractor on summary judgment. *See id.*

**¶32** The Landowners read *Flooring Systems* as requiring direct interaction between the owner and the subcontractor as a precondition to liability, pointing to CSA's solicitation of Flooring Systems's bid. But the *Flooring Systems* Court's analysis rested entirely on the *Murdock-Bryant* framework—whether the work was gratuitous or officious and whether the owner paid anyone for it—and those were the only questions the Court treated as legally operative. CSA's solicitation was relevant only as evidence that Radisson Group sought and acquiesced in the improvements, satisfying *Murdock-Bryant*'s requirement that the owner not have received the benefit officiously. An owner who seeks improvements through other means, such as arranging for improvements by hiring a general contractor, fully satisfies that requirement. *See Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 74 ¶¶ 27–28 (App. 2011); *see also A M Leasing, Ltd. v. Baker*, 163 Ariz. 194, 199 (App. 1989) (describing *Flooring Systems* as "typical of those cases in which the defendant, while retaining a benefit conferred by the plaintiff with expectation of payment, pays no one or renders only partial payment").

**¶33** Cases before and after *Murdock-Bryant* and *Flooring Systems* have reached similar conclusions. *See Williamson*, 228 Ariz. at 74 ¶¶ 27–28 (relying on *Flooring Systems* to reverse summary judgment for owners on an unjust enrichment claim where a factual dispute existed whether they had fully paid the contractor for a subcontractor's work); *Com. Cornice & Millwork, Inc. v. Camel Constr. Servs. Corp.*, 154 Ariz. 34, 40 (App. 1987) (reversing dismissal of restitution claim where the owner paid no one for the subcontractor's work, notwithstanding that the subcontractor's contract was with the general contractor); *Costanzo v. Stewart*, 9 Ariz. App. 430,

432–33 (1969) (holding the owner liable for unjust enrichment where he knew the subcontractor expected payment and paid no one for the completed work).[3]

¶34        Additionally, the principles drawn from *Murdock-Bryant* and *Flooring Systems* are consistent with Restatement (Third) of Restitution and Unjust Enrichment § 25(2)(a)–(c) (2011), which builds on Restatement § 110 and provides that a claimant who renders uncompensated contractual performance that benefits a third party is entitled to restitution if: (1) restitution would not subject the defendant to a forced exchange, (2) the defendant would otherwise retain the benefit without paying anyone for it, and (3) restitution would not impose on the defendant an obligation from which the parties understood it would be free.   *See* Restatement (Third) of Restitution and Unjust Enrichment § 25 cmt. b (stating that Restatement § 110 is the provision's starting point).

¶35        Taken together, *Murdock-Bryant*, *Flooring Systems*, and their progeny establish that the unjustness inquiry turns on a straightforward question: did the owner seek, authorize, or acquiesce in receiving improvements that someone performed without gratuitous intent, and did it pay no one for them?   If so, the owner's retention of the benefit without compensating the party whose work produced it is unjust.

### D.   Markham Sufficiently Alleged That The Landowners Were Unjustly Enriched

¶36        Turning to the case here, we conclude that Markham sufficiently alleged that the Landowners' enrichment at Markham's expense was unjustified.   As alleged, the Landowners petitioned to establish the District to finance and develop infrastructure in Cahava

---

[3]   The court of appeals concluded in *Costanzo* that the owner's knowledge of the subcontractor's payment concerns and assurance of payment to the subcontractor established good cause for restitution.   9 Ariz. App. at 432–33.   The court's holding rested on Restatement § 40, which obligates a recipient of services to pay for them if it has reason to know that the provider believes it or someone else will pay.   The owner's direct interaction with the subcontractor was evidence of that knowledge, not a standalone requirement, as the Landowners suggest.   Other circumstances may equally establish that an owner had reason to know the work would not be performed gratuitously.

Springs for the benefit of their own property. The agreement between the District and the Landowners evidences the latter's intent to obtain infrastructure and fund those improvements, in part, through assessments. Markham's agreement with the District evidences its intent not to construct the improvements gratuitously or officiously. The Landowners are, therefore, like Wilbur in *Murdock-Bryant* and Radisson Group in *Flooring Systems*. Like those owners, the Landowners sought improvements, arranged for a third party to make them, knew someone would have to perform the work, and then allegedly reaped the benefit of that work without paying for it. Adjudicating the Landowners liable for unjust enrichment in this circumstance, if proven, would not effectively force them into a legal relationship with Markham or make them "unwitting guarantors" for District contracts. *See Wang Elec.*, 230 Ariz. at 320 ¶ 16. For the reasons explained, *see supra* ¶¶ 21–26, *Wang Electric* is inapplicable, and there is no need to allege that the Landowners acted improperly. Markham has sufficiently alleged that the Landowners were unjustly enriched. *See Murdock-Bryant*, 146 Ariz. at 53–54; *Flooring Systems*, 160 Ariz. at 227.

¶**37** The Landowners' public policy arguments do not warrant a different result. Their core contention here is that subjecting lot owners within a revitalization district to unjust enrichment liability will destabilize the Act's bond-financing mechanism by introducing unpredictable exposure that underwriters cannot price. The Landowners did not raise this argument to the superior court or the court of appeals and have therefore waived it here. *See Willis v. Bernini*, 253 Ariz. 453, 458 ¶ 13 (2022) ("Normally, arguments raised for the first time in supplemental briefing are waived.").

¶**38** Even if we considered the arguments, we would not reach a different result. First, the Landowners cite nothing in the Act preempting equitable remedies, and the Act is silent on what happens when the funding mechanism fails and a contractor goes unpaid. Second, this case comes to us on a motion to dismiss. The full contours of how unjust enrichment liability interacts with the Act's financing structure in this and future cases will depend on facts not yet developed. Third, the *Murdock-Bryant* and *Flooring Systems* framework itself may supply the limiting principle the Landowners say is missing: only an owner who sought, authorized, or acquiesced in improvements it paid no one for faces unjust enrichment liability. An owner who played no such role likely has no exposure.

¶39 For these reasons, the superior court erred by granting the motion to dismiss. On remand, the Landowners remain free to contest whether the facts as developed satisfy the unjust enrichment elements, including whether their enrichment was in fact unjustified under the *Murdock-Bryant* and *Flooring Systems* framework.

### E. Attorney Fees

¶40 Both parties request an award of attorney fees under A.R.S. § 12-341.01(A), which authorizes an award of reasonable fees to the successful party if the action arises out of a contract. Because neither party is yet successful in this matter, we exercise our discretion to decline both requests without prejudice to reasserting them before the superior court. If the successful party requests fees again pursuant to § 12-341.01, the parties and the court should address whether this matter is one "arising out of a contract."

### CONCLUSION

¶41 For the foregoing reasons, although we agree with the court of appeals' disposition, we vacate its memorandum decision to replace its reasoning with our own. We reverse the superior court's dismissal of the first amended complaint and its denial of the motion for leave to file a second amended complaint and remand to that court for further proceedings.